Wilbur Thomas CONNELLY, Administrator of the Estate of Mary Ball Connelly, Deceased, Appellant,

v.

Bruce B. PAUL, et al., Appellees.

No. 01–86–00856–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 7, 1987.

Rehearing Denied June 4, 1987.

Jacalyn D. Scott, Wilshire & Scott, Houston, for appellant.

Arthur L. Forbes, Houston, for appellees.

Before JACK SMITH, DUGGAN and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a judgment awarding the appellees the sum of $94,334 after a trial to the court.

In September of 1968, Mary B. Connelly filed lease applications with the federal government and deposited approximately $94,573 in advance delay rentals for future oil and gas explorations on Alaskan lands. On March 9, 1971, Connelly died, and on May 11, 1971, her son was appointed administrator of her estate. A controversy arose between the Eskimos and the United States government, and as a result, the government rejected the first of four groups of leases in April of 1977. After the rejection, Connelly's estate became entitled to a refund of the deposits.

On August 29, 1977, the appellees, Bruce Paul, Fred Stein, and Fleschner Becker Associates, filed an original action against the appellant to remove him as administrator. The appellees also sought to enjoin him from disposing of the refunded deposits and lease application rights, and to seek a declaration of their rights with regard to the lease applications and deposit refunds. On September 20, 1985, the appellees filed their first amended original petition, alleging ownership of 50% of the refunded deposits based upon a purchase agreement and a subsequent letter agreement.

In his first three points of error, the appellant contends that the trial court erred in entering judgment for the appellees because their claim was a liquidated claim for money that was required to be presented to the administrator as a prerequisite to judgment, and because the claim was conclusively barred by the four-year statute of limitations.

The probate code provides that "[n]o judgment shall be rendered in favor of a claimant upon any *claim for money* which has not been legally presented to the representative of an estate or ward." Tex.Prob. Code Ann. § 314 (Vernon 1980) (emphasis added). It further provides that "[a]ll *claims for money* against a testator or intestate shall be presented to the executor or administrator within six months after the original grant of letters testamentary or of administration." Tex.Prob.Code Ann. § 298(a) (Vernon 1980) (emphasis added). By express statutory provisions, only "claims for money" are required to be presented to the administrator before the initiation of a suit thereon.

A "claim for money" that requires presentment to and rejection by an administrator before suit includes claims for definite sums based upon specific data; it does not include a claim for an undetermined amount. *Anderson v. First Nat'l Bank*, 120 Tex. 313, 38 S.W.2d 768 (1931). If a claim cannot be verified with a reasonable degree of certainty, it need not be presented before suit. *Id.* 120 Tex. at 315, 38 S.W.2d at 770. The claim must be fixed and definite, not contingent and indeterminate, because it must be supported by an affidavit stating that the claim is just and that all legal offsets, payments, and credits have been allowed. Tex.Prob.Code Ann. § 301 (Vernon 1980). Thus, only verifiable money claims that can be reduced to a reasonably certain liquidated amount must be presented. *Lusk v. Mintz*, 625 S.W.2d 774 (Tex.App.—Houston [14th Dist.] 1981, no writ).

It is undisputed that the appellees did not present a claim against the estate within six months of the original grant of the letters of administration. However, the appellees assert that their claim did not constitute a liquidated "claim for money" that required presentment.

The present claim involved the construction of a purchase agreement and a letter agreement executed by the appellees, and Mary B. Connelly, Gene Van Dyke, and Theresa Van Dyke. The original application, filed one month after the rejection of a group of leases by the government, alleged a joint venture between these parties. It further sought a declaration of the appellees' rights, duties, legal relations, and exact ownership in and to all applications, refunds, and oil and gas leases in the name

of Connelly or her estate. Although the purchase agreement purported to grant the appellees a 12.5% interest, the parties dispute whether the letter agreement grants the appellees an additional 37.5% interest in the refunded deposits.

The original suit was motivated by the rejection of the leases in April of 1977. However, when it was filed on August of 1977, the appellees did not know how many of Connelly's approximately 80 lease applications were being rejected, the total amount of the deposits being refunded, or if certain leases would still be enforced. Moreover, the leases under the agreement were in the names of Connelly and the Van Dykes. The federal government issued refund checks on June 6, 1977, November 10, 1977, August 30, 1982, and September 27, 1982. Therefore, the total amount of the refunded deposits was not known until September of 1982, more than four years after the suit was initiated, and in excess of 11 years after Connelly's death.

■■■ We conclude that the appellees' claim was not a liquidated "claim for money." The original action sought injunctive relief, as well as a declaration of appellees' rights under the purchase agreement and letter agreement. Claims for unliquidated amounts, injunctive relief, or for title to or possession of property need not be presented to and rejected by the administrator as a prerequisite to the filing of a suit against the estate. *Lusk v. Mintz,* 625 S.W.2d at 776. The appellees' claim in the present case was unliquidated at the time the original action was filed because the total amount of refunds was unknown, the potential issuance of leases still existed, and the percentage of ownership in the refunds was disputed. There is no presentment requirement where damages become liquidated after suit has been filed. Finally, the action was not barred by limitations because the suit was filed one month after the initial lease rejection, and the claim did not require presentment.

Appellant's first three points of error are overruled.

In his fourth and final point of error, the appellant urges that the trial court erred in finding that the appellees were the owners of a 50% interest in the refunded deposits.

It is undisputed that the purchase agreement entitled the appellees to a 12.5% interest in the deposits. However, the appellees assert that the letter agreement entitled them to an additional 37.5% interest in the refunded deposits, resulting in their total ownership of 50%. Appellant contends that the appellees received only a 37.5% interest in the lease "applications" and not the deposits.

The letter agreement provided that upon the paying of an additional $114,000 for a seismic operation, the appellees obtained an additional interest "to aggregate a ⅜ths interest, thereby bringing our group's total ownership therein to fifty percent (50%), subject only to the Smith and Simasko Overriding Royalties, totaling one and one-half percent (1½%)." The letter was to confirm the understanding that the appellees "shall have the right to receive all of the proceeds from any disposition of any interest in the Applications until our group has received a total of $714,000...." The letter agreement was signed by Mary B. Connelly, Gene Van Dyke, and Theresa Van Dyke. The appellees paid the additional $114,000, entitling them to the additional interest.

■■■ Whether a contract is ambiguous is a question of law for the court to decide. *Coker v. Coker,* 650 S.W.2d 391 (Tex.1983). If the instrument is so worded that the court can give it certain and definite legal meaning and interpretation, it is not ambiguous. *Radx Corp. v. Demy,* 658 S.W.2d 298 (Tex.App.—Houston [1st Dist.] 1983, no writ). If the instrument is reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument. *Id.* at 301. When a provision in a contract is ambiguous, the court must take into account the parties' understanding of it to determine the true intent. *Consol. Eng'g Co. v. S. Steel Co.,* 699 S.W.2d 188 (Tex. 1985). The conduct of the parties, which indicates a construction that the parties have themselves placed on the contract,

may be considered in determining the parties' true intent. *Id.*

As a general rule, all instruments in a given transaction should be construed together. *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324 (Tex.1984). Therefore, in this case, we consider the original purchase agreement, loan agreement, security agreement, and option agreement together with the letter agreement.

Reviewing the purchase agreement, we find that the appellees' 12.5% included the applications, deposits, and the leases, but for convenience was termed the "undivided 12½ interest." Section 2.9 provided that the purchase price was to be reduced if the leases were not issued, and a proportionate refund was to be issued to the appellees.

The loan agreement created an option for an additional 37.5% interest in all leases. Section 4.4 provided that any refunds of deposits were to be paid over and delivered to the lenders, the appellees, to reduce the indebtedness on the note.

The security agreement assigned to the appellees all of Connelly's interest in all money claims and the advanced delay rentals, which she might become entitled to by reason of her applications.

The option agreement gave the appellees an election to provide funds for seismic operations that would then entitle them to a 37.5% interest. Section 4.1 stated: "it being the intention hereof that, if the option is exercised, the Purchasers will then own in the aggregate an undivided 50% interest in the leases." The summary provisions again emphasized that the 37.5 interest in the leases that "added to the undivided 12½% interest acquired under the purchase agreement would bring the purchasers' interest to an undivided 50% interest in the leases."

The court considered testimony from Malcolm Fleschner, a member of the joint venture group, who testified that the letter agreement gave the appellees the right to receive the first $714,000 and that figure included the refunds. Fleschner testified without objection that it was his understanding that the appellees were to receive the deposits "if and when they were refunded." According to Fleschner, the Van Dykes, who signed the letter agreement along with Connelly, did tender their refunded deposits from the rejected leases to the appellees.

The trial court found, in its findings of facts and conclusions of law, that under the purchase agreement and letter agreement, the appellees were the owners of a 50% interest in the refunded deposits. We are not bound by the trial court's conclusions of law, but under the state of the record, we are bound to affirm the judgment if there is any theory on which that might be done. *LaChance v. Hollenbeck,* 695 S.W.2d 618 (Tex.App.—Austin 1985, writ ref'd n.r.e.). When considering the record and evidence before us, we conclude the trial court did not err in determining that the appellees were entitled to a 50% interest in the refunded deposits.

Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.