**WADSWORTH PROPERTIES, Appellant,**

v.

**ITT EMPLOYMENT AND TRAINING SYSTEMS, INC., Appellee.**

No. 01–91–0048–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 19, 1991.

Rehearing Denied Oct. 17, 1991.

**820**

Harvey F. Cohen, Austin, for appellant.

Ramon E. Williams, Houston, for appellee.

Before DUNN, SAM BASS and HUGHES, JJ.

## OPINION

DUNN, Justice.

The appellant, Wadsworth Properties, appeals the take-nothing judgment entered, after trial to the court, in favor of the appellee, ITT Employment and Training Systems, Inc. ("ITT").

Wadsworth Properties sued ITT for breach of a commercial lease. Wadsworth Properties claimed ITT breached the lease by failing to make full monthly rental payments in July, August, and September 1988, and by failing to make any rental payments beginning in October 1988. ITT claimed it was authorized to and did terminate the lease, thereby excusing ITT from making any monthly rental payments beginning in October 1988.

On October 15, 1985, Wadsworth Properties and ITT executed a lease agreement. Under the lease, ITT leased a floor in a building from Wadsworth Properties for 60 months beginning November 15, 1985. The agreed monthly rental was $12,610.67. One event of default under the lease was defined as ITT's failure to pay any rent when due if the failure continued for 15 days after written notice from Wadsworth Properties.

An addendum to the lease reduced the monthly rental rate to $7,881.67. The addendum also added a clause giving ITT a right to terminate the lease. Under the termination clause, ITT had the right to terminate the lease

> if, for any reason, funding to Tenant named herein [ITT] currently being received by it from Houston Job Partnership Council is terminated by said Council ... provided there exists no uncured default on the part of Tenant [ITT] under this Lease at the effective date of termination.

According to Robert Wadsworth, president and general partner of Wadsworth Properties, ITT requested the clause because it was concerned that its current funding from the Houston Job Partnership Council ("Council") would be terminated. Wadsworth testified that he understood the "current funding" in the termination clause to refer to the funding ITT was receiving for the 1985–86 program year. Therefore, Wadsworth felt if the lease was not terminated during the 1985–86 program year, the termination clause was no longer in effect. Wadsworth believed any future funding ITT received from the Council had no bearing on ITT's right to terminate under the lease.

Paul Stumbaugh, director of real estate for ITT, testified that the termination clause was added to protect ITT in the event its funding was reduced or terminated. ITT was primarily concerned with the renewal of its funding; it was not particularly concerned that funding would be terminated in the middle of a program year. ITT intended the termination clause to be applicable at any time during the term of the lease. The clause was to be used in the event funding was terminated or was reduced to a level making it uneconomical for ITT to operate. Stumbaugh claimed ITT's intention was communicated to Wadsworth Properties before the lease was executed, and Wadsworth Properties had no objection.

On April 10, 1987, Wadsworth Properties and ITT amended the lease by a letter agreement. The amendment provided that the monthly rental would be negotiated every 12 months on July 1, unless the Council awarded ITT funding in excess of $1,000,000 for the 12 month period. If funding exceeded $1,000,000, the existing monthly rental of $7,881.67 would remain in effect. The monthly rental was reduced to $4,166.67 for the period beginning July 1, 1987, and ending June 30, 1988. The amendment specifically reaffirmed all other terms of the lease, including the termination clause.

On February 9, 1987, Stumbaugh wrote a letter to Wadsworth Properties expressing ITT's intention to exercise its right of termination; the Council was reducing ITT's funding. Instead of terminating the lease, ITT and Wadsworth Properties renegotiated the monthly rental and signed the amendment. The reduced monthly rental allowed ITT to continue to operate at its reduced level of funding. Wadsworth testified that Wadsworth Properties signed the amendment as a compromise. ITT had originally requested reduced space. Wadsworth claimed that he anticipated negotiations, under the amendment, to occur each year based on the level of ITT's funding.

On August 22, 1988, ITT informed Wadsworth Properties that it would exercise its option to terminate under the lease effective September 30, 1988. ITT stated that its funding expired on August 22, 1988, and the Council had not accepted any of ITT's proposals to renew funding.

Thomas Huter, former divisional controller of ITT, testified that at the time the lease was executed, ITT had approximately $1,600,000 funding from the Council. For the 1986–87 program year, the Council reduced funding to ITT to approximately $338,000; in 1987–88, the Council reduced funding to ITT to approximately $340,000. Huter felt that because of the reduced funding, ITT had the right to terminate the lease. In the spring and early summer of 1988, on behalf of ITT, Huter negotiated with the Council for the 1988–89 program year. On September 8, 1988, the Council sent ITT a letter outlining a proposal and indicating that if the proposal was unacceptable to ITT, no further negotiations would be necessary. Huter recommended the proposal not be accepted because it would result in losses to ITT. ITT did not accept the proposal.

Before trial, ITT and Wadsworth Properties stipulated that ITT made monthly rental payments in the amount of $4,166.67 for the months of July, August, and September 1988. They also stipulated that ITT failed to make any monthly rental payment for October 1988, or any subsequent month.

■ The trial court entered judgment that Wadsworth Properties take nothing from ITT. The trial court filed no findings

of fact or conclusions of law. In the absence of findings of fact or conclusions of law, an appellate court should presume the trial court made all necessary findings to support its judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *In re Estate of Johnson,* 781 S.W.2d 390, 391 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

The trial court's implied findings may be challenged by "factual sufficiency" points just as jury findings may be. *Roberson,* 768 S.W.2d at 281. In determining whether the evidence is sufficient to support an implied finding, an appellate court should consider and weigh all evidence before the trier of fact. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust should an appellate court set the finding aside. *Cain,* 709 S.W.2d at 176; *Glockzin,* 760 S.W.2d at 666. An appellate court cannot substitute its opinion for that of the trier of fact and determine that it would reach a different conclusion. *Glockzin,* 760 S.W.2d at 666.

In its second point of error, Wadsworth Properties contends that the trial court erred in entering judgment in favor of ITT because the lease was unambiguous as a matter of law. Specifically, Wadsworth Properties contends that the lease unambiguously provided that ITT only had a right of termination in the first year of the lease. ITT agrees that the lease was unambiguous, but contends that the lease unambiguously provided that ITT had a right of termination at any time during the term of the lease.

Whether a contract is ambiguous is a question of law for the court. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *Connelly v. Paul,* 731 S.W.2d 657, 660 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). A court should interpret a contract to give effect to the intentions of the parties as expressed in the contract. *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 520 (Tex.1984); *Block 316 Ga-*

*rage, Ltd. v. Wortham & Van Liew,* 705 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). If a court can give a contract a definite legal interpretation, the contract is unambiguous, and the court will construe the contract as a matter of law. *Coker,* 650 S.W.2d at 393; *Connelly,* 731 S.W.2d at 660. A contract is ambiguous only if it is reasonably susceptible to more than one interpretation. *Coker,* 650 S.W.2d at 393; *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 147 (Tex.App.—Houston [1st Dist.] 1986, no writ). When the parties agree that a contract is unambiguous but disagree over its construction, a court should determine which interpretation gives effect to the parties' intentions as expressed in the contract. *KMI Continental Offshore Prod. Co. v. ACF Petroleum Co.,* 746 S.W.2d 238, 241 (Tex.App.—Houston [1st Dist.] 1987, writ denied); *Gulf & Basco Co. v. Buchanan,* 707 S.W.2d 655, 658 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The lease provided ITT had the right to terminate the lease if "for any reason, funding to ... [it] currently being received by it from Houston Job Partnership Council is terminated." The lease did not state that the termination clause only applied to the first year of the lease. Moreover, the termination clause was specifically reaffirmed in the amendment signed in 1987, the third year of the lease. *See Connelly,* 731 S.W.2d at 661 (instruments executed in one transaction should be construed together). We find that the lease was unambiguous and provided ITT a right to terminate the lease at any time during the term of the lease.

Wadsworth Properties' second point of error is overruled.

In its fourth point of error, Wadsworth Properties contends that the trial court erred in entering judgment in favor of ITT because ITT failed to plead that the lease was ambiguous.

As discussed above, the lease was not ambiguous, nor did ITT claim the lease was ambiguous. Therefore, Wadsworth Prop-

erties' fourth point of error is without merit.

Wadsworth Properties' fourth point of error is overruled.

■ In its third and fifth points of error, Wadsworth Properties contends that the trial court erred in entering judgment in favor of ITT because the Council had not terminated ITT's funding when ITT attempted to exercise its termination right. Wadsworth Properties also contends that the evidence was insufficient to support the trial court's implied finding that the Council had terminated ITT's funding.

Huter testified that ITT negotiated with the Council for funding for the 1988–89 program year. During those negotiations, the Council sent ITT a letter with a proposal; ITT rejected the proposal because it was not economically feasible. The Council told ITT that if the proposal was unacceptable, further negotiations were unnecessary. Wadsworth Properties asserts that the Council did not terminate ITT's funding; rather, the funding for the 1987–88 program year simply expired, and ITT made an economic decision to forego further funding. We disagree. Because ITT rejected the Council's proposal, the Council discontinued negotiations. In effect, the Council terminated ITT's funding, and the evidence was sufficient to support the trial court's implied finding.

Wadsworth Properties' third and fifth points of error are overruled.

In its sixth point of error, Wadsworth Properties contends that the trial court erred in entering judgment in favor of ITT because, as a matter of law, ITT was in default of the lease at the time it attempted to exercise its right of termination. In its eighth point of error, Wadsworth Properties contends that the evidence was insufficient to support the trial court's implied finding that ITT was not in default under the lease.

The amendment to the lease provided monthly rentals for July 1987, through June 1988, would be $4,166.67. The amendment further provided that monthly rentals would be renegotiated each July based on ITT's funding from the Council for the next 12 months. The amendment did not provide the amount of the monthly rental if such renegotiation occurred; the amendment did not state whether the rental would continue at the reduced rate or revert to the higher rate set in the addendum. We must determine the proper interpretation of the amendment.

■ In determining the proper interpretation of a provision of a contract, a court may consider the circumstances surrounding execution of the contract. *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *KMI Continental,* 746 S.W.2d at 241. The amendment was entered after the Council reduced ITT's funding. The purpose of the amendment was to tie the monthly rentals to the amount of funding ITT received from the Council. Therefore, we find the parties contemplated the rental continuing at the reduced rate until such time as the rental was renegotiated based on ITT's funding.

Since the renegotiation of the rental never took place, ITT was only obligated to pay $4,166.67 in monthly rentals for July, August, and September 1988. ITT complied with this obligation. Hence, ITT was not in default under the lease when it exercised its right of termination, and the evidence was sufficient to support the trial court's implied finding.

Wadsworth Properties' sixth and eighth points of error are overruled.

■ In its first point of error, Wadsworth Properties contends that the trial court erred in entering judgment in favor of ITT because, as a matter of law, Wadsworth Properties was entitled to recover the unpaid rental for the unexpired term of the lease. In its seventh point of error, Wadsworth Properties contends, among other things, that the trial court erred in entering judgment in favor of ITT because, as a matter of law, Wadsworth Properties was entitled to recover the amount of rent it was underpaid for July, August, and September 1988.

As discussed above, ITT did not underpay rent for July, August, or September

1988. In addition, ITT exercised its termination right under the lease effective September 30, 1988. Consequently, ITT was excused from paying any further rentals beginning October 1, 1988. We find Wadsworth Properties was not entitled to recover the rentals it was allegedly underpaid for July, August, and September 1988, nor was it entitled to recover the rentals for the unexpired term of the lease.

Wadsworth Properties' first point of error and this portion of its seventh point of error are overruled.

In its seventh point of error, Wadsworth Properties contends that it was entitled, under the stipulation of the parties, to recover attorney's fees.

Before trial, ITT and Wadsworth Properties agreed that if judgment was rendered in favor of Wadsworth Properties, it was entitled to recover attorney's fees of $5,000 for preparation and trial of the cause and $3,500 for preparation and presentation of the cause to the court of appeals. Neither the trial court nor this Court rendered judgment in favor of Wadsworth Properties. Thus, Wadsworth Properties was not entitled to attorney's fees under the stipulation.

Wadsworth Properties' seventh point of error is overruled in its entirety.

The judgment is affirmed.