UNIVERSAL PRINTING CO., INC.; David W. Claxton; Matthew Kalisek; Alda Escobedo, Independent Executrix of the Estate of Ruben C. Martinez, Deceased; Rabih S. Assaf; J. Linne Girouard; and Donald J. Pinckard, Appellants,

v.

PREMIER VICTORIAN HOMES, INC. and City of Houston, Appellees.

Premier Victorian Homes, Inc., Appellant,

v.

Universal Printing Co., Inc.; David W. Claxton; Matthew Kalisek; Alda Escobedo, Independent Executrix of the Estate of Ruben C. Martinez, Deceased; Rabih S. Assaf; J. Linne Girouard; and Donald J. Pinckard, Appellees.

No. 01–99–00429–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 22, 2001.

Rehearing Overruled March 8, 2002.

David W. Holman, Helen A. Cassidy, Karl C. Hoppess, Daniel P. Meanor, Sheila Haddock, Houston, for appellant.

David A. Furlow, Tracey D. Conwell, Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

In this dispute over land access in the Houston Heights, a homebuilder sued neighboring landowners to prevent them from blocking an alley. The homebuilder prevailed in a bench trial. The homeowners appeal the trial court's judgment, awarding $10,000 in actual damages and $100,000 in attorney's fees. We affirm.

### I. Case Background

The homebuilder, Premier Victorian Homes, Inc. ("Premier"), sued several indi-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

viduals and a printing company (collectively, "the homeowners") to obtain and maintain access to land owned by Premier. Premier alleged the homeowners were intentionally cutting off access to three homes it was building. In an amended petition, Premier added the City of Houston as a defendant.

In its live pleading at the time of trial, Premier alleged civil conspiracy and common law nuisance claims and sought a declaratory judgment, permanent injunction, damages, and attorney's fees. The homeowners pursued a counterclaim against Premier and a cross-claim against Paul Gomberg, president of Premier, alleging trespass and seeking injunctive relief.

Following a five-day bench trial, the trial court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Since January 30, 1998, Plaintiff has been the owner in fee simple of a parcel of real property and of all improvements on that property located in Harris County, Texas, more particularly described as follows:

 The North 25' of Lot 18 and Lot 19 of Block 303 (001*TR 25) Houston Heights Addition, Harris County, Texas (hereinafter the "Property").

2. Plaintiff purchased the Property for the purpose of constructing three (3) Victorian homes for resale to the public.

3. Plaintiff received building permits from the City of Houston to construct all three houses, allowing for alley access to rear-loading garages for each house.

4. All of the Defendants, other than the City, own property either on Cortlandt or Arlington that abuts the common 15' alley that runs behind the Property.

5. Plaintiff was prevented from gaining access to the alley by Defendants Universal Printing Company, Inc., Davis W. Claxton, Amy M. Ell, Matthew Kalisek, Alda Escobedo, as Independent Administratrix of the Estate of Reuben [sic] C. Martinez, Rabih S. Assaf, J. Linne Girouard, and Donald J. Pinckard (hereinafter collectively referred to as "Defendants") who had constructed fences in and/or maintained other obstructions such as automobiles and/or filed affidavits of adverse possession claiming ownership in a portion of the alley.

6. Because of the actions of Defendants, Plaintiff was unable to complete construction of one of the homes and thereby suffered permanent damages.

7. Because of the actions of Defendants, Plaintiff incurred attorney's fees in prosecuting its claim.

8. Plaintiff filed the above referenced cause seeking declaration of its rights in and to the alley as well as a permanent injunction, money damages, and attorney's fees.

9. The City of Houston was brought into the lawsuit as a necessary party to determine the respective rights of the parties *vis a vis* the alley.

 Should any of these findings of fact be deemed conclusions of law, then they shall be treated as such.

### CONCLUSIONS OF LAW

1. Plaintiff's declaratory judgment action is maintainable.

2. It is declared that the alleys were publicly dedicated in 1892 pursuant to the map or plat thereof, and the alleys are public.

3. Defendants' properties are subject to the public dedication as stated in the original map or plat of the Houston Heights.

4. That ownership interest in the alley is subject to an individual's superior rights of ingress and egress in the alleys.

5. The Plaintiff has the private right of ingress and egress through the alley, including vehicular ingress and egress.

6. Defendants had a right to use the alley up until Plaintiff requested to exercise its superior rights to use the alley.

7. Defendants had no right to keep obstructions in the alleys after Plaintiff requested use of the alley.

8. Defendants' obstructions constituted a nuisance, particularly to Plaintiff.

9. There was a conspiracy among the Defendants to support each other to wrongfully maintain their fences in the alley.

10. Defendants entered into a conspiracy to keep Plaintiff from exercising its legal right to ingress and egress in the alleys.

11. Defendants' affidavits of adverse possession were perjured because when they filed the affidavits they did not know whether the affidavits were accurate or not; the affidavits were perjured because the Defendants did not have personal knowledge of the information contained therein; and the affidavits were erroneous and wrongful.

12. Defendants are jointly and severally liable to Plaintiff for damages in the amount of Ten Thousand and No/100 Dollars ($10,000.00).

13. The indebtedness of Defendants to Plaintiff for damages bears prejudgment interest at the rate of ten per cent (10%) per annum from March 19, 1998 until paid, and post-judgment interest at the rate of ten per cent (10%) per annum from November 13, 1998 until paid.

14. Defendants are jointly and severally liable to Plaintiff for costs of court.

15. The indebtedness of Defendants to Plaintiff for costs of court bears post-judgment interest on this sum at the rate of ten percent (10%) per annum from November 13, 1998 until paid.

16. At trial Plaintiff proved up reasonable attorney's fees.

17. Defendants are jointly and severally liable to Plaintiff for attorney's fees incurred by Plaintiff in the amount of One Hundred Thousand and No/100 Dollars ($100,000).

18. The indebtedness of Defendants to Plaintiff for attorney's fees bears post-judgment interest on this sum at the rate of ten percent (10%) per annum from November 13, 1998 until paid.

19. Plaintiff may put gravel or whatever material it chooses in the alley without following any particular City of Houston code or ordinance. No City of Houston code or ordinance requires any other material.

20. Should any of these conclusions of law be deemed findings of fact, then they shall be treated as such.

The homeowners bring five issues with multiple sub-parts, asserting the trial court erred by (1) denying them a jury trial; (2) denying a trial continuance; (3) awarding attorney's fees; (4) determining Premier

has a choice in surface material for the alley; and (5) awarding damages.[1]

## II. Jury Demand

In issue one, the homeowners assert the trial court committed reversible error by denying them a jury trial. To make a proper jury request, a party must timely (1) make a written request for a jury trial, and (2) pay the jury fee. TEX.R. CIV. P. 216; *Huddle v. Huddle*, 696 S.W.2d 895 (Tex.1985). Here, the issue is whether the homeowners *timely* paid their jury fee.

On April 16, 1998, the homeowners demanded a jury trial in their first amended answer. Also on April 16, the homeowners tendered $105 to the court clerk (a $101 check and $4 cash). The court clerk did not credit any of the $105 sum to the jury fee.

The case was set for trial on October 19, 1998. Counsel for the homeowners determined that, according to the district clerk's records, the jury fee had not been paid. Immediately after discovering that the clerk's records showed the jury fee was unpaid, the homeowners tendered a $30 jury fee. The next day, on October 20, 1998, the homeowners filed an emergency motion to place the case on the jury docket, which the trial court addressed at a hearing on October 23, 1998.

The reporter's record from the emergency hearing consists of extensive discussion by counsel and testimony by a deputy clerk. Counsel for the homeowners attributed all error, if any, for untimely payment to the court clerk's office. According to an attorney for the homeowners, he *believed and intended* that the $105 sum paid on April 16, 1998, included payment of a $30 jury fee. Although the face of the check

did not contain a breakdown of the fees paid, counsel showed an annotation, made by the law firm, on the *check stub* (file-stamped by the clerk's office) that indicated payment of a $30 jury fee, as well as a $45 constable fee and $26 filing fee. Counsel asserted the check stub put the clerk on notice about the jury request and that the clerk's office was in error by failing to take affirmative action to correct any payment shortages with regard to the jury fee. Counsel also complained that the clerk's office had not mailed an itemized receipt to the law office, showing how the $105 had been assessed.

Before the deputy clerk entered the courtroom to testify, the trial court indicated it would not consider the non-payment of the jury fee to be clerk error if the homeowners did not pay enough money for a jury fee, as follows:

THE COURT: I'm not talking about the check stub. I'm talking about when you file a case, there's some fees that have to be paid and a jury fee is not one of them. So if you give them a check, they're going to allocate it to the fees that have to be paid.

. . . .

THE COURT: Okay. I—I would not be impressed with an argument that movant didn't want to pay the fees they had to pay and intended to pay a jury fee instead. That—I wouldn't be [impressed] with that at all.

[COUNSEL FOR HOMEOWNERS]: I don't think there was any conscious decision making going on, Your Honor. That's what we're saying.

THE COURT: If the clerk assessed some fee that the clerk should not have assessed that would be enough to pay

---

1. Although Premier filed its own notice of appeal, it raises no points of error and does not seek reversal of any portion of the trial

court's judgment. *See* TEX.R.APP. P. 25.1(c). Accordingly, we dismiss Premier's appeal.

the jury fee, then I would say that then you've got a leg to stand on.

■ According to testimony by a deputy clerk, the $105 paid by the homeowners was inadequate to cover the jury fee after mandatory filing costs and constable fees were deducted. In fact, the $101 check issued by the law firm was inadequate for the mandatory fees, and that is why the person who filed the documents in-person had to pay $4 cash. The clerk also explained that its standard practice is to give receipts to people, rather than mailing them. Specifically, the testimony provided:

> [CLERK]: It is required that they pay the filing fee for a cross-action and that's what we did in this instance here. If they had requested a jury fee and they filed a cross-action, a jury fee is considered a request. The cross-action is required to have a fee at the time of filing. So if we didn't do the jury fee, the money would have gone automatically to what is required to have a filing fee at the time of filing, which is the cross-action. So, if we didn't apply the money to the jury fee, it's because we had a cross-action that they filed and the money should have been for that.
>
> . . . .
>
> THE COURT: Tell me about those other charges.
>
> [CLERK]: A cross-action is really $26. It's [sic] just breaks down the fee. The $45 is for citation, constable fee and the $8 is for citation. So the $15 and the $1 and the $10 fee is actually a total of $26,

which is a filing fee for a cross-action. The $8 plus the $45 is $53, which went for the citations . . .

> THE COURT: Okay. Mr. Grosz, did you guys file two cross-actions at that time?
>
> [COUNSEL FOR HOMEOWNERS]: There was a—one cross claim and one counterclaim filed.[2]
>
> . . . .
>
> THE COURT: So if they gave you enough money for filing the cross claim and filing the counterclaim, which would be $26 each for a total of $52 and they still had some money left over, how would you know to apply part of that to the constable fee?
>
> . . . .
>
> [CLERK]: The address and probably a service 29 form or a cover letter telling us they wanted that to go out and to be served upon that defendant.
>
> . . . .
>
> THE COURT: So you're saying the clerk should have chosen the jury fee and left out the constable fee and said, "Well, I know you wanted a jury so here, I'm going to do that"?
>
> [COUNSEL FOR HOMEOWNERS]: We're just saying that that's how it was submitted and that was the intent.
>
> . . . .
>
> THE COURT: Well, the cover letter doesn't say anything about what you wanted. It says you're filing an original answer and counterclaim.
>
> . . . .

**2.** The homeowners' motion includes copies of the clerk's receipts, which the clerk examined as she testified, that show how the clerk's office applied the $105. Based on the cumulative testimony and the receipts, the clerk's office applied the $105 as follows:

| | |
|---|---|
| filing cross-claim against Paul Gomberg | $ 15 |
| citation with one copy | $ 8 |
| security fee | $ 1 |
| constable fee | $ 45 |
| legal services fee | $ 10 |
| filing counterclaim against Premier | $ 15 |
| security fee | $ 1 |
| legal services fee | $ 10 |
| | $105 |

[COUNSEL FOR PREMIER]: And in this case where the fee wasn't sufficient by the person—whoever came there in person and $4 was paid in cash so it appears that somebody was there knowing—I mean, they got a number of $4 from someplace and they paid [$4] instead of 34. Seems like they could have paid 34 and got the jury fee paid, too.

. . . .

[COUNSEL FOR PREMIER]: Does it appear that somebody paid in person here, that there was somebody standing there?

[CLERK]: No, it don't always tell if the person—if it's cash, it is in person. Okay.

[COUNSEL FOR PREMIER]: Does this show cash?

[CLERK]: It does.

[COUNSEL FOR PREMIER]: Does the person standing there need to ask for the receipt if they want a copy of the receipt?

[CLERK]: Right. Usually we ask them if they want to wait for their receipt and if they don't, we'll tell them they can pick it up in the case file or sometimes we mail it.

At the conclusion of the hearing, the trial court conditionally denied the emergency motion for jury trial as follows:

THE COURT: All right. What I think is that if the case goes to trial on this setting that it should not be a jury trial. So the motion is denied. However, if I do not reach this case on this setting, then I don't know if it will be reset for as much as thirty days or not but whether it is or not, I'll permit a jury on the next setting if we don't reach it on this setting and more than likely it will be thirty days anyway so that the jury fee would become good then.

. . . .

THE COURT: Yes, where is Premier in relation to the case we're trying right now?

[COURT COORDINATOR]: They are two out. The next case is the Foley's case, which is—they say they can get it tried in a day and a half.

THE COURT: Okay. So we have a case that we're finishing up for a day or two next week. Then we have another case that says a day and a half so figure at least two and you all might possibly be called to start on Thursday if everything goes as bad as I think it may.

On November 3, 1998 (15 days after the homeowners made the October 19 payment of $30), the matter proceeded to trial without a jury.

The homeowners first reurge the same argument they made before the trial court, that they timely paid the jury fee on April 14, 1998, more than six months before trial, and that any error should be attributed to the clerk's office. Although the trial court did not make express findings about these matters, in light of the court's ruling, we must presume the court concluded the homeowners did not pay any part of the jury fee until October 19 and that the clerk's office did not misapply the fees. *See Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *Wadsworth Prop. v. ITT Employment & Training Sys., Inc.*, 816 S.W.2d 819, 822 (Tex.App.—Houston [1st Dist.] 1991, writ denied). There is ample testimony by the clerk, as well as an indirect admission by counsel, to support these implied findings. *See Roberson*, 768 S.W.2d at 281; *Wadsworth*, 816 S.W.2d at 822.

Next, the homeowners urge the Court to apply a 10 day jury fee deadline under section 51.604 of the Texas Government Code, rather than a 30 day deadline under rule 216 of the Texas Rules of Civil Procedure. Thus, the homeowners assert, they

were entitled to a jury because the trial began more than 10 days after October 19, the day they paid the jury fee.

The statute relied on by the homeowners provides:

**Jury Fee**

(a) The district clerk shall collect a $30 jury fee for each civil case in which a person applies for a jury trial. The clerk of a county court or statutory county court shall collect a $22 jury fee for each civil case in which a person applies for a jury trial. The clerk shall note the payment of the fee on the court's docket.

(b) The fee required by this section must be paid by the person applying for a jury trial *not later than the 10th day before the jury trial is scheduled to begin.*

(c) *The fee required by this section includes the jury fee required by Rule 216, Texas Rules of Civil Procedure,* and any other jury fee allowed by law or rule.

TEX. GOV'T CODE ANN. § 51.604 (Vernon 1998) (italics added).

Premier, on the other hand, relying on rule 216 of the Texas Rules of Civil Procedure, asserts the jury fee is due 30 days before trial. Rule 216 provides:

**Request and Fee for Jury Trial**

**a. Request.** No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but *not less than thirty days in advance.*

**b. Jury Fee.** *Unless otherwise provided by law, a fee of ten dollars if in the district court* and five dollars if in the county court must be deposited with the clerk of the court *within the time for making a written request for a jury trial.* The clerk shall promptly enter a notation of the payment of such a fee upon the court's docket sheet.

TEX.R. CIV. P. 216 (italics added).

 The homeowners assert section 51.604 and rule 216 conflict, and that a statute prevails over a rule. However, we conclude the statute and rule are not inconsistent; instead, they supplement one another. Based on a plain reading of the statute and rule, rule 216 requires that a $10 jury fee be paid "not less than thirty days in advance" before "the date set for trial." Section 51.604, on the other hand, addresses additional revenue-enhancing or administrative-type fees that a district clerk shall charge in relation to the jury fee, and states those additional fees must be paid "no later than the 10th day before the jury trial is scheduled to begin." Subsection (c) specifically states that the $30 jury fee *includes the [$10] jury fee required by rule 216.* Section 51.604 increases revenue to the clerk's office, but does not supplant the 30–day deadline imposed by rule 216.

We note that the $30 fee provision of section 51.604, sub-section (a), is separate from the 10–day deadline provision, sub-section (b). Also, sub-section (c) harmonizes the statutory fee and rule 216 fee by prohibiting the clerk from charging a $30 section 51.604 fee *and* a $10 rule 216 fee. Thus, to ensure a jury here, the homeowners were required to pay as follows: at least $10 as the jury fee, no later than 30 days before trial was set (pursuant to rule 216); and the remaining $20, no later than 10 days before trial was scheduled (pursuant to section 51.604). Because, as the trial court implicitly found, the homeowners did not pay rule 216's $10 jury fee 30 days in advance of trial, they did not timely pay the jury fee.

 Having concluded that section 51.604 does not conflict with rule 216, and

that the homeowners did not establish timely payment, we next consider whether the trial court properly denied the jury request. When a party does not timely pay the jury fee, the decision to permit a jury trial is strictly within the trial court's discretion. *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex.1997) (orig. proceeding); *Dawson v. Jarvis*, 627 S.W.2d 444, 446–47 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). However, even where a party does not timely pay the jury fee, courts have held that a trial court should accord the right to a jury trial if it can be done without interfering with the orderly handling of the court's docket, delaying the trial, or injuring the opposite party. *General Motors*, 951 S.W.2d at 476; *Dawson*, 627 S.W.2d at 446–47.

▮ We first examine whether granting a jury trial would have interfered with the orderly handling of the trial court's docket. *General Motors*, 951 S.W.2d at 476; *Dawson*, 627 S.W.2d at 446–47. At the emergency hearing, the trial court expressed genuine surprise regarding the jury request and court docketing concerns, as follows:

THE COURT: I don't care how counsel for defendants allocated their money.

[COUNSEL FOR HOMEOWNERS]: Well, I understand.

THE COURT: If you guys have made a mistake, that's tough.

[COUNSEL FOR HOMEOWNERS]: That's what we're—that's what I'm saying, Judge. We're not—we're not disputing that. It was an inadvertent mistake, Your Honor, and the point is—

THE COURT: Okay.

[COUNSEL FOR HOMEOWNERS]:— under these types of circumstances where we made a timely request for the jury but just due to inadvertence failed to timely get the fee in, and once we discovered it, paid the fees.

The cases are replete, Your Honor. It would be an abuse of discretion to deny the jury trial.

THE COURT: If I grant a jury, the only thing I can do is also grant a continuance for two reasons.

*One, because I have to give the plaintiffs time, since nobody has been planning on a jury trial in this case, and the other one is because the Court didn't plan on a jury trial in your case.*

[COUNSEL FOR HOMEOWNERS]: Understood.

THE COURT: *And I always count on nonjury cases—I do not have a separate nonjury and jury docket but I count on the nonjury cases allowing me to complete the docket.*

*Since non—since jury cases always take at least a day and probably two days longer than a nonjury trial for the same case, it prevents me from reaching at least one other case and in this case, it would prevent me from reaching this case as well.*

*We're already a week behind on our docket, which is not your fault, but it does mean that we have less time to play with and—*

(Italics added.)

Contrary to the homeowners' assertions, we conclude the trial court's stated concerns about delaying the instant case, as well as at least one other case, are understandable and legitimate. We are unpersuaded by the homeowners' reliance on *Dawson*, where the trial court had expected a jury trial up to the morning of the trial. *Dawson*, 627 S.W.2d at 446–47. We also conclude *Hardy v. Port City Ford Truck Sales, Inc.*, 693 S.W.2d 578 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), is inapposite. In *Hardy*, the party timely paid the jury fee. *Id.* at 579.

The homeowners, relying on *General Motors*, also assert the trial court applied "sham" reasoning when it denied them a jury. 951 S.W.2d at 477. As stated by the Texas Supreme Court, *General Motors* arose under "particular and unusual circumstances." *Id.* In *General Motors*, the court began the trial 26 days after the jury fee was paid, and after acknowledging significant discovery issues would probably cause multiple interruptions to the trial, with no expectation of reaching the heart of the case for weeks or months. *Id.*

To support their sham argument here, the homeowners seek to refute the trial court's expression of surprise about the homeowner's desire for a jury trial by relying on the following events:

(1) Two filed documents that reference a jury:

(a) on August 31, 1998, the trial court signed its standard trial preparation order, which included the statement, "Bring trial preparation report including proposed jury questions, special instructions, and all of the above to docket call"; and

(b) on June 24, 1998, the trial court signed an order granting in part Premier's motion for severance or bifurcation, filed June 15, 1998, which referenced a jury (the motion included language, "will confuse the jury");

(2) The trial court's statement during the jury demand hearing, "If you guys have made a mistake, that's tough"; and

(3) The cause was tried 15 days after the denial of the motion for jury trial and, when it was tried, it was tried "seriatim" on November 3 (Tuesday), 4 (Wednesday), 5 (Thursday), 9 (Monday), and 13 (Friday).

We are unpersuaded by the homeowners' argument. In the context of the entire record, these three isolated matters are insufficient, either individually or collectively, to carry appellant's burden of showing the trial court was not surprised and gave a sham explanation. The two jury references are minor, pre-typed references in documents that were filed in a case involving a very large clerk's record, and that were filed two and four months before the trial court's hearing on the jury trial. Also, the trial court's "tough" statement was isolated and casual. Additionally, it is undisputed the trial court reached the case on its then-current docket setting. Also, it is not uncommon for a trial to be continued on non-consecutive days—particularly with an intervening weekend and holiday (Veteran's Day), as here. Moreover, these events are especially overshadowed by the trial court's ruling that it would allow a jury if the case was not reached during its current docket.

We next examine whether granting a jury trial would have delayed the trial of the case. *General Motors*, 951 S.W.2d at 476; *Dawson*, 627 S.W.2d at 447. The trial court's statement, set forth above, indicates permitting a jury would have delayed the trial and, for reasons already discussed, we take this statement at face value. Also, the homeowners did not establish any evidence to the contrary. Accordingly, the homeowners have not met their burden to show a jury would not have delayed the trial of the case.

Finally, we consider whether granting a jury would have injured Premier. *General Motors*, 951 S.W.2d at 476; *Dawson*, 627 S.W.2d at 447. At the hearing, counsel for Premier very clearly stated she was surprised by the jury request and would be harmed if the court granted the request, as follows:

[COUNSEL FOR PREMIER]: That's not the situation here is what we're trying to point out. We never thought that

there was going to be a jury. In fact—I mean, we obviously—we filed findings of fact and conclusions of law. We checked prior to—we checked the—you know, we have subscriber access. We checked that to make sure that there was no jury fee paid.

We never relied on that fact. We didn't prepare for a jury. We're not prepared to go before a jury. It's more—it's much more expensive to have a trial before a jury than before the bench and we're not prepared to do that and because—

[COUNSEL FOR HOMEOWNERS]: Your honor—excuse me.

[COUNSEL FOR PREMIER]: The issues are very complicated. Most of them are legal issues. There's—there's very few fact issues involved and we think it's more proper before the bench.

. . . .

[COUNSEL FOR HOMEOWNERS]: I don't have any—I mean, I understand the Court's position on what it will do to the Court's docket but for them to stand here and tell this Court they didn't know about a jury trial when it's been a demand in every pleading since April the 14th is not accurate.

. . . .

THE COURT: I'm sorry. You don't know about a jury trial until the jury fee has been paid and it's a jury trial on the court's docket.

■ To refute Premier's claim of surprise, the homeowners reurge the same points to this Court that they urged before the trial court: (1) Premier was aware of the jury demand included in the homeowner's amended answer, served April 14, 1998; (2) in Premier's motion for severance or bifurcation, it argued for separate trials or bifurcation because a single trial "will confuse the jury"; and (3) Premier filed a motion in limine that included,

"Permitting interrogation of witnesses, comments to jurors, or prospective jurors, or offers of evidence concerning any of these matters would unfairly prejudice the jury." Premier explained the language was boilerplate, the motions in limine were filed in response to the trial preparation order, and the proposed findings of fact and conclusions of law was evidence that Premier anticipated a bench trial.

■ Again, although the trial court did not make express findings about injury to Premier, in light of the court's ruling, we must presume the court believed that Premier did not expect a jury. *See Roberson,* 768 S.W.2d at 281; *Wadsworth,* 816 S.W.2d at 822. The trial court, as the trier of fact at the jury demand hearing, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom,* 965 S.W.2d 575, 580 (Tex.App.—Houston [1st Dist.] 1997, writ denied). There is sufficient testimony by counsel to support the implied finding.

We conclude the trial court did not abuse its discretion in denying the jury request. Accordingly, we overrule issue one.

### III. Continuance

In issue two, the homeowners alternatively assert the trial court abused its discretion when it denied their motion for continuance. The homeowners' motion to place the cause on the jury docket alternatively asked for a continuance. The homeowners reurge the same complaints raised in their first issue. For the same reasons discussed in the preceding section, we conclude the trial court did not abuse its discretion when it denied the continuance motion.

We overrule issue two.

## IV. Attorney's Fees

In issue three, the homeowners assert the trial court erred in awarding $100,000 in attorney's fees because the attorney's fees were improper under the Uniform Declaratory Judgments Act ("the Act"), TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–37.011 (Vernon 1997 & Supp.2001), and because the fees were not properly segregated. The homeowners do not complain about the sufficiency of the evidence to support the $100,000 sum.

### A. Declaratory Judgment

The homeowners essentially complain that Premier brought a declaratory action solely for the purpose of obtaining attorney's fees. It is undisputed the trial court awarded the attorney's fees pursuant to the Act. Therefore, if an award of attorney's fees is improper under the Act, Premier cannot recover any attorney's fees.

▇▇▇ Although a court may render a declaratory judgment "whether or not further relief is or could be claimed," the Act may not be relied on to convert all actions into declaratory judgment actions. TEX. CIV. PRAC. & REM.CODE ANN. § 37.003 (Vernon 1997); see, e.g., Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc., 796 S.W.2d 763, 772 (Tex.App.—Dallas 1990, writ denied) (holding a plea for declaratory relief may not be coupled to a damage action merely to pave the way to recover attorney's fees). The homeowners assert the attorney's fees were improper under the Act for two reasons: (1) Premier's cause of action duplicated its injunctive cause of action; and (2) the declarations sought were moot.

▇▇▇ There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy. See Kenneth Leventhal & Co. v. Reeves, 978 S.W.2d 253, 258–59 (Tex. App.—Houston [14th Dist.] 1998, no pet.); Barnett v. City of Colleyville, 737 S.W.2d 603, 606–607 (Tex.App.—Fort Worth 1987, writ denied). The homeowners assert that Premier sought equitable title and injunctive relief, rather than declaratory relief. Specifically, the homeowners assert that all the findings requested in the declaratory judgment pleading hinge on a declaration that the alley is public, and that same finding—that the alley was public—was also essential to grant injunctive relief.

In their live pleading, Premier sought the following declarations relevant to the homeowners: [3]

a. A declaration that the 15' strip of land that runs north/south in the middle of the block and the entire length of Block 303, Houston Heights Addition is dedicated to public use to the City of Houston and is accepted by the City of Houston for public use;

b. A declaration that the Plaintiff has unrestricted right of egress and ingress to the alley in question;

c. A declaration that the obstructions in the alleys erected or allowed to remain in place by Defendant Property Owners constitute a nuisance and/or a public nuisance and/or purprestures;

Following the trial, as set forth above in the conclusions of law, the trial court granted the declaratory relief. The home-

---

**3.** Additionally, Premier sought, "A declaration that Article I, section 40.07 of the [City of Houston] Code of Ordinances applies to obstructions in the alleys in the Houston Heights," which relates to the City of Hous-

ton, rather than the homeowners. However, the parties agreed before trial that they were seeking no attorney's fees and no damages against the City.

owners do not dispute the merits of the trial court's declarations.

The homeowners primarily rely on *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 684 (Tex.App.—Waco 1998, no pet.), to assert that equitable relief, rather than declaratory relief, was appropriate here. Premier, on the other hand, relies on *Viscardi v. Pajestka*, 576 S.W.2d 16 (Tex.1978), to establish that declaratory relief was appropriate. Neither case is dispositive. The facts and issues in *McRae*, which involved ownership of mineral interests following competing fraudulent acquisitions, and the cases relied upon by the *McRae* court, are not sufficiently similar to the facts and issues here. In *Viscardi*, although the court affirmed a declaratory judgment action that resolved an individual's right to use an alley, it did not address the issue of whether another cause of action was appropriate.[4]

After reviewing all authority and the record, we are persuaded by a significant matter here—the existence of the adverse possession affidavits (which were recorded in the public records)—that a declaratory action was appropriate. It is undisputed that some of the homeowners had filed affidavits of adverse possession in the public records during the dispute and they had not revoked the affidavits when the case proceeded to trial. Also, the individuals continued to testify at trial that they still owned the alley.

■ Although, as pointed out by the homeowners, the live pleading for the homeowners no longer asserted they owned the alley, we are not always bound by the status of the live pleadings with regard to attorney's fees. *See, e.g., City of*

*Carrollton v. Duncan*, 742 S.W.2d 70, 79 (Tex.App.—Fort Worth 1987, no writ) (awarding attorney's fees despite disclaimer of title, due to long-asserted position to the contrary). From the inception of the dispute until very shortly before trial, the homeowners asserted the alley was not public, and, during trial, some homeowners testified they owned the alley.

■ The homeowners also assert the attorney's fees were improper because the relief sought was moot. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 228–29 (Tex.1993) (dismissing employment declaratory action as moot because service agency withdrew from offering adoption services and abolished position); *Kenneth Leventhal*, 978 S.W.2d at 259 (holding declaratory action was moot because accountant received everything he sought in a breach of contract claim). Generally, a case is considered moot if the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988).

Again, due to the unrevoked affidavits in the deed records and the continued insistence of ownership, the declaratory relief was appropriate. We also find the homeowners' reliance on *Coombs v. City of Houston*, 35 S.W.2d 1066 (Tex.Civ.App.—Galveston 1930, no writ), unconvincing. *Coombs*, addressing the streets and alleys in the Houston Heights, had long been published, as well as discussed by the parties, when the homeowners were pleading private ownership in the alley.

**B. Segregation of Fees**

■ Next, the homeowners complain Premier did not segregate its attorney's fees between claims and parties.

---

4. The Act did not authorize attorney's fees for suits filed before September 1, 1981 and, thus, were not at issue in *Viscardi*. *See* Tex. Rev.Civ. Stat. Ann. 2524–1, § 10 (Vernon Supp.2001).

As a general rule, in a case involving multiple claims, the party seeking attorney's fees must present sufficient evidence of a reasonable fee for the legal services attributable specifically to the claims for which recovery of attorney's fees is authorized. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991). An exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of the same facts. *Id.*

We conclude the facts relied on for each of Premier's claims and defenses were sufficiently interrelated to avail it of this exception. Premier had to prove the same allegations to establish its right to relief under each theory of recovery. Also, with regard to the issue of not segregating the fees for Amy Ell, the settling homeowner, Premier had to establish the same allegations of civil conspiracy and nuisance, which necessarily involved each homeowner. In any event, Premier's attorney testified in extreme detail about the attorney's fees for each day of her representation, including the fees specifically associated with Ell's settlement.

The homeowners assert that if we conclude, as we have, the facts relied on for each of Premier's claims and defenses were sufficiently interrelated so as to allow attorney's fees, it necessitates a holding that Premier cannot recover attorney's fees under the Act. We disagree. Just because the same facts are relied upon to establish different causes of action, does not mean that different types of relief are not appropriate. As discussed in the preceding section, the additional relief afforded by the Act was appropriate under the facts presented here.

We overrule issue three.

## V. Alley Surface

In issue four, the homeowners assert the trial court erred as a matter of law in determining that Premier can surface the alley as it chooses. Specifically, the homeowners challenge the following conclusion of law:

> Plaintiff may put gravel or whatever material it chooses in the alley without following any particular City of Houston code or ordinance. No City of Houston code or ordinance requires any other material.

It is clear from the record that, at the time of trial, there was no City of Houston code or ordinance requiring any particular type of material to be put on the alley surface. The homeowners' complaint has no merit.

We overrule issue four.

## VI. Damages

In issue five, the homeowners assert the evidence is legally insufficient to support the award of $10,000 in actual damages.

Findings of fact entered in a case tried to the court have the same force as a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Bond v. Kagan–Edelman Enters.*, 985 S.W.2d 253, 256 (Tex.App.—Houston [1st Dist.] 1999), *rev'd on other grounds*, 20 S.W.3d 706 (Tex.2000). The trial court's findings of fact are reviewable for legal sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal sufficiency of the evidence supporting a jury's answer to a jury question. *Catalina*, 881 S.W.2d at 297; *Bond*, 985 S.W.2d at 256.

Accordingly, when, as here, the party without the burden of proof challenges the legal sufficiency of the evidence,

we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *Ned v. E.J. Turner & Co., Inc.,* 11 S.W.3d 407, 408 (Tex.App.— Houston [1st Dist.] 2000, pet. denied). If there is more than a scintilla of evidence to support the finding, we must uphold it. *Associated Indemnity,* 964 S.W.2d at 285–86; *Ned,* 11 S.W.3d at 408.

The trial court's finding of fact six states: "Because of the actions of Defendants, plaintiff was unable to complete construction of one of the homes and thereby suffered permanent damages." Conclusion of law 12 states: "Defendants are jointly and severally liable to plaintiff for damages in the amount of ... ($10,-000.00)."

The evidence at trial includes the following. Paul Gomberg, Premier's president, testified that, due to the alley dispute, he had to modify his plans from building three homes to building two homes. According to Gomberg, Premier suffered lost profits and increased land costs from the inability to sell a third home. He testified that he would have gotten better deals from subcontractors and real estate agents if he had built three houses rather than two, and that the costs increased $54,234 per house from his original plans. Premier had to construct a temporary culvert, and had to resurvey the property, allowing for two homes instead of three. In connection with the 428 Cortlandt home, which sold for $255,000, Premier had to pay a 5% broker's commission ($12,750), rather than a 4% commission ($10,200). Gomberg stated that Premier experienced substantial construction delays due to the alley dispute, and Premier lost other business. Premier's employees dropped from five to two because of the lawsuit. Premier had to extend its bank loans and change lenders. Jeffrey Schneider, President of Universal Printing Company, acknowledged during trial that in his deposition he had agreed that Premier's inability to continue constructing three homes cost Premier money.

We conclude the evidence supports the finding that Premier suffered actual damages of $10,000 as a result of Defendants' actions.

We overrule issue five.

We affirm the trial court's judgment.[5]

---

5. As stated at the beginning of this opinion, Premier raises no points of error and does not seek reversal of any portion of the trial court's judgment. Therefore, we dismiss Premier's appeal.