**In re Michael B. LEE; Greenberg, Peden, Siegmyer & Oshman, P.C.; William M. McKnight; Calvary Temple of Baytown, Inc.; and Global Ministries, Inc.**

No. 04–99–00097–CV.

Court of Appeals of Texas, San Antonio.

May 26, 1999.

J. Shelby Sharpe, Stan Tillman, Sharpe & Tillman, Fort Worth, for appellant.

George L. LeGrand, Stanley Bernstein, LeGrand & Bernstein, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice PAUL W. GREEN, Justice KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

Relators, Michael B. Lee, Greenberg, Peden, Siegmyer & Oshman, P.C., William M. McKnight, Calvary Temple of Baytown, Inc., and Global Ministries, Inc., seek mandamus relief from the trial court's denial of their motion for summary judgment. Because they have an adequate remedy by appeal, we deny the relators' petition for writ of mandamus.

### FACTUAL AND PROCEDURAL BACKGROUND

Scott Bell, a San Antonio police officer, investigated an alleged financial "scheme" involving Calvary Temple of Baytown. In doing so, he contacted Calvary Temple's bank, which in turn contacted Calvary Temple and informed its pastor, Dr. William McKnight, of Officer Bell's investigation. On August 27, 1998, on behalf of Calvary Temple and Dr. McKnight, Michael B. Lee, an attorney with the law firm Greenberg, Peden, Siegmyer & Oshman, P.C., sent a letter to Officer Bell claiming that Bell's inquiries at the bank damaged Calvary Temple's relationship with the bank, as well as its reputation in the community. In his letter, Lee goes on to threaten suit for Bell's slanderous comments to the bank. Lee demanded an apology, compensation, and a response. Lee sent copies of his letter to the Professional Standards Section of the San Antonio Police Department and to the San Antonio City Attorney.

On September 21, 1998, Officer Bell sued Lee, Lee's law firm, Dr. McKnight, Calvary Temple, and Global Ministries, Inc. for slander, libel, civil conspiracy to commit slander, intentional infliction of emotional distress, and tortious interference with a police investigation all based upon the publication of Lee's letter. On

October 1, 1998, and November 5, 1998, the defendants/relators filed motions for summary judgment asserting that the statements in Lee's letter are absolutely privileged by the fact that they were made by an attorney in contemplation of litigation. Both of the motions were denied. The defendants/relators now seek mandamus relief in this court, contending they have no adequate remedy by appeal.

## DISCUSSION

■■■ Mandamus is an extraordinary remedy, and it will lie only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994); *Walker v. Packer*, 827 S.W.2d 833, 841 (Tex.1992). The Relator bears the burden of showing both an inadequate remedy at law and an abuse of discretion. *Canadian Helicopters*, 876 S.W.2d at 304. A party has no adequate remedy by appeal when the appellate court would not be able to cure the trial court's error after a judgment has been entered. *TransAmerican Natural Gas Corp. v. Flores*, 870 S.W.2d 10, 12 (Tex.1994).

■■ In this case, the relators acknowledge that mandamus relief is not generally available to cure trial court error in the denial of a motion for summary judgment. The relators argue, however, that this case presents a rare circumstance in which such relief is warranted. Specifically, the relators contend that the absolute privilege enjoyed by attorneys who draft and publish correspondence in anticipation of litigation is an immunity from suit, not simply immunity from liability. Therefore, according to the relators, the trial court's denial of their motion for summary judgment effectively denies them the immunity they are entitled to by virtue of their assertion of absolute privilege and forces them to defend a defamation suit. Because they argue that absolute privilege precludes them having to face a charge of defamation at all, the relators assert that once they are forced to defend the defamation charge in this case, the privilege is

lost and cannot be remedied once a judgment has been entered. Therefore, the relators contend that they have no adequate remedy at law.

In addressing the relators' claim, the question we must answer is whether the absolute privilege we addressed in *Thomas v. Bracey*, 940 S.W.2d 340 (Tex.App.—San Antonio 1997, no writ), offers those who may claim it an immunity from suit or a defense to liability. As the relators point out, we referred to the privilege asserted in *Thomas* as "the affirmative defense of absolute privilege." *Id.* at 344. While the relators note that our statement was made in dictum, we reaffirm it here as a matter of law.

■■■ It is well settled that communications made in contemplation of, preliminary to, or in the course of a judicial proceeding may not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *See id.* at 342–43 (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). Although the phrase "may not serve as the basis for a civil action" might pique some confusion as to the scope of the privilege, we believe the history and use of the privilege indicate that its intended purpose is to provide merely a defense to defamation claims, not an absolute immunity from those claims. We know of no Texas case where absolute privilege was asserted as anything other than an affirmative defense to a defamation claim. Indeed, the privilege has its roots in the Restatement Second of Torts, where it is discussed in chapter 25, which is entitled *"Defenses to Actions for Defamation."* RESTATEMENT (SECOND) OF TORTS § 586 (1977) (emphasis ours).

According to the relators, the privilege is an immunity and not a defense; therefore, they contend that they will be irreparably harmed if they are not permitted to seek mandamus relief from the denial of their summary judgment and are forced to go to trial. Instead of bolstering their position, this argument reinforces the fact

that the privilege at issue was never intended to offer immunity from suit. The Texas Legislature, by statute, has enumerated certain circumstances in which the denial of a summary judgment may be appealed. Two of these circumstances deal specifically with cases involving immunity. *See* TEX. CIV. PRAC. § REM.CODE ANN. § 51.04(5) (Vernon 1997) (authorizing interlocutory appeal from denial of summary judgment based on assertion of official immunity); TEX. CIV. PRAC. § REM.CODE ANN. § 51.04(6) (Vernon 1997) (authorizing interlocutory appeal from denial of summary judgment based on a claim against or defense by a member of the media or person whose communication appears in the media, arising under the free speech or free press clause of the United States or Texas Constitutions).

Individuals who successfully invoke these types of immunity are immune from suit, not just from liability. *See Teran v. Valdez,* 929 S.W.2d 37, 38 (Tex.App.—Corpus Christi 1996, no writ); *Grant v. Wood,* 916 S.W.2d 42, 46 (Tex.App.—Houston [1st Dist.] 1995, no writ). Thus, the Legislature has provided the necessary relief in these cases via an interlocutory appeal from the denial of summary judgment. The Legislature has not, however, authorized an interlocutory appeal from the denial of summary judgment based on a claim of absolute privilege by an attorney. It would be an over-expansion of our role to assume that, because the Legislature authorized relief from an interlocutory order denying certain types of immunity, it intended to authorize identical relief from orders denying other non-specified types of immunity. If the Legislature had believed the successful assertion of absolute privilege in cases involving attorney communication should result in immunity from suit, it would have provided a means of appealing the denial of a summary judgment based on such an assertion. As it is, the Legislature did not do so. The summary judgment at issue in this case, then, is a non-appealable interlocutory order.

The relators now seek to use the mandamus process to circumvent the long-standing rule that the denial of summary judgment is not appealable. *See Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994). They do this in spite of the equally long-standing rule that mandamus is not available to correct incidental trial court rulings, such as the denial of a motion for summary judgment. *See Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985). In support of their position, the relators rely on *Tilton v. Marshall,* 925 S.W.2d 672 (Tex.1996).

In *Tilton,* the supreme court issued a writ of mandamus directing the trial court to dismiss certain claims against the relator where the trial of those claims, and not merely the imposition of an adverse judgment, would violate the relator's constitutional rights. *See id.* at 682. We address the *Tilton* decision first by noting that the action taken by the supreme court in that case is not the norm. *See id.* at 695 (Enoch, J., concurring in part and dissenting in part) (noting that supreme court has never before "held that mandamus is available to review the denial of a motion for summary judgment"). *Tilton* involved a very unique set of circumstances in which trial of the matter would have necessarily violated the relator's constitutional right to freedom of religion. Even then, the court noted that "mandamus may not be appropriate in every case in which constitutional rights are impaired." *Id.* at 682. The *Tilton* court, therefore, carved out an extremely narrow exception to an already narrow rule. Because there are *no* constitutional implications in the present case, the *Tilton* exception does not apply. We find nothing to indicate that the relators in this case have no adequate remedy at law.

By way of comparison, the Supreme Court of Ohio, in *Celebrezze v. Netzley,* 51 Ohio St.3d 89, 554 N.E.2d 1292 (1990), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990), addressed the issue of whether the denial of a motion for summary judgment constitutes a final appeal-

able order where the motion is premised on the assertion of an absolute immunity from liability in defamation actions. The court distinguished "immunity from suit" from "defense to liability" in holding that a claim for absolute privilege is the latter and is, therefore, "not lost if a motion for summary judgment fails and a trial ensues." *Id.* at 92, 554 N.E.2d at 1295. Indeed, because the absolute privilege at issue, if applicable in this case, will operate to shield the relators from liability, they have an adequate remedy by ordinary appeal. *See Putter v. Anderson,* 601 S.W.2d 73, 77 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (reversing libel judgment following a jury trial because defendant's statements were absolutely privileged as a matter of law).

Because this case does not involve circumstances so extraordinary that an ordinary appeal is inadequate, the relators have failed to demonstrate that they are entitled to mandamus relief. Accordingly, the relators' petition for writ of mandamus is denied. Our previous order staying the underlying proceeding is lifted.