

# NUMBER 13-13-00609-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

WENDY LEE KYLE,                                                          Appellant,

v.

H.T. STRASBURGER, INDIVIDUALLY AND
IN HIS CAPACITY AS A MEMBER OF THE
BOARD OF DIRECTORS OF FIDELITY BANK
OF TEXAS, AND AS A MEMBER OF TUITION
LLC; SHIRLEY STRASBURGER, INDIVIDUALLY
AND IN HER CAPACITY AS VICE-CHAIR OF
THE BOARD OF DIRECTORS OF FIDELITY
BANK OF TEXAS, AND AS A MEMBER OF THE
TUITION LLC; TERRY WHITLEY, INDIVIDUALLY
AND IN HIS CAPACITY AS PRESIDENT AND
MEMBER OF THE BOARD OF DIRECTORS OF
FIDELITY BANK OF TEXAS; FIDELITY BANK
OF TEXAS; AND TUITION LLC,                                              Appellees.

## On appeal from the 250th District Court
## of Travis County, Texas.

# MEMORANDUM OPINION ON REMAND

## Before Chief Justice Contreras[1] and Justices Valdez and Rodriguez[2]
## Memorandum Opinion on Remand by Justice Contreras

We issued our memorandum opinion on remand and judgment in this matter on December 28, 2018. Appellant Wendy Lee Kyle has filed a motion for rehearing. We deny the motion for rehearing but withdraw our December 28, 2018 memorandum opinion on remand and judgment and substitute the following memorandum opinion on remand and accompanying judgment.

This matter is before the Court on remand from the Texas Supreme Court.[3] Kyle argued by five issues that the trial court erred in granting summary judgment dismissing her claims against appellees, Fidelity Bank of Texas et al. (collectively Fidelity).[4]

The dispute arose from a 2004 home equity loan which was secured by a deed of trust on the Austin homestead belonging to Kyle and her ex-husband Mark. Kyle later learned that Mark's employee forged Kyle's signature on the loan documents. Subsequently, pursuant to a Rule 11 agreement, Kyle executed a special warranty deed

---

[1] Chief Justice Dori Contreras, formerly Justice Dori Contreras Garza. *See* TEX. FAM. CODE ANN. § 45.101 *et seq.* (West, Westlaw through 2017 1st C.S.).

[2] The Honorable Rogelio Valdez, former Chief Justice of this Court, and the Honorable Nelda V. Rodriguez, former Justice of this Court, participated in the consideration of this case on original submission, but their terms of office expired on December 31, 2018. Retired Justices Valdez and Rodriguez have been assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

[3] The appeal was transferred to this Court from the Third Court of Appeals in Austin pursuant to an order issued by the Texas Supreme Court. *See id.* § 73.001 (West, Westlaw through 2017 1st C.S.).

[4] Appellees are H.T. Strasburger, individually and in his capacity as a member of the board of directors of Fidelity Bank of Texas, and as a member of Tuition LLC; Shirley Strasburger, individually and in her capacity as vice-chair of the board of directors of Fidelity Bank of Texas, and as a member of Tuition LLC; Terry Whitley, individually and in his capacity as president and member of the board of directors of Fidelity Bank of Texas; Fidelity Bank of Texas; and Tuition LLC.

and an agreed divorce decree transferring her interest in the homestead to Mark. In this suit, filed in 2012, Kyle alleges that she agreed to the transfer only because Fidelity and others incorrectly and fraudulently led her to believe that the property would be foreclosed upon and that she would be held personally liable on the home equity loan.

On original submission, we affirmed the trial court's dismissal of the following claims made by Kyle, on limitations grounds: (1) for declaratory judgment that the deed of trust securing the loan is void; (2) for forfeiture of principal and interest under article XVI, section 50 of the Texas Constitution; and (3) for declaratory judgment setting aside the special warranty deed. *Kyle v. Strasburger*, 520 S.W.3d 74, 80 (Tex. App.—Corpus Christi 2015) (holding that the alleged defects made the loan voidable, not void *ab initio*, and applying the residual four-year statute of limitations), *aff'd in part & rev'd in part*, 522 S.W.3d 461 (Tex. 2017). We also held that because Kyle's statutory real estate fraud, Texas Finance Code, and Deceptive Trade Practices Act (DTPA) claims (collectively, the statutory claims) were each dependent on her claim that the deed of trust is void, those claims were properly disposed of on no-evidence grounds. 520 S.W.3d at 81–83.[5]

The supreme court affirmed in part and reversed in part, holding that: (1) Kyle's claim for forfeiture of principal and interest was not an independent cause of action under the Texas Constitution and was therefore properly dismissed; but (2) the statute of limitations did not bar Kyle's declaratory judgment claims and, therefore, those claims and the remaining statutory claims should not have been dismissed. 522 S.W.3d at 464–67 ("A home-equity loan secured by a lien that was not created with the consent of each

---

[5] After Kyle filed her notice of appeal in 2013, the trial court rendered an order denying Fidelity's motion for sanctions against Kyle for filing a frivolous lawsuit. Fidelity appealed that order separately, and we affirmed. *Strasburger v. Kyle*, No. 13-14-00079-CV, 2016 WL 1072618, at *1 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op.).

3

owner and each owner's spouse is not 'a debt described by this section' [under article XVI, section 50] and is therefore invalid unless and until such consent is obtained. . . . The statute of limitations does not bar Kyle's claim to declare the lien invalid.") (citing *Garofolo v. Ocwen Loan Servicing*, 497 S.W.3d 474, 478 (Tex. 2016); *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 548 (Tex. 2016)).[6]

In accordance with the supreme court's opinion, we now consider whether summary judgment on Kyle's outstanding claims was supported on any of the other grounds raised in Fidelity's motions. We affirm in part and reverse and remand in part.

## I. BACKGROUND

In our 2015 opinion, we set forth the background of this case as follows:

On May 24, 2004, appellant's ex-husband, Mark Kyle, obtained a 1.1 million dollar home equity loan from Fidelity, a loan which was secured by the couple's homestead. It is undisputed that Mark's employee signed appellant's name on the loan documents, including the promissory note, deed of trust, and disclosure statements.[7] Fidelity alleges that appellant consented to her friend signing the document[8]; however, appellant claims that she did not consent to the forgery and learned of the signature later. In late 2009, appellant filed for divorce from Mark. During the divorce proceedings, Mark failed to pay ad valorem taxes and Fidelity declared the note on the loan in default. Threatened with foreclosure, attorneys for Mark and appellant attempted to negotiate a forbearance agreement with Fidelity that would temporarily abate the threatened foreclosure of the couple's homestead. Appellant refused to sign a document requiring her to verify that she had signed the original loan documents. Terry Whitley, Fidelity's

---

[6] As to Kyle's claim for declaratory judgment setting aside the special warranty deed, we affirmed summary judgment on limitations grounds because Kyle did not challenge those grounds on appeal with respect to that claim. *Kyle v. Strasburger*, 520 S.W.3d 74, 80–81 (Tex. App.—Corpus Christi 2015), *aff'd in part & rev'd in part*, 522 S.W.3d 461 (Tex. 2017). The Texas Supreme Court disagreed, finding that "[a]lthough Kyle could have more clearly referenced the deed claim in the portion of her brief devoted to the statute of limitations, she fully responded to the substance of Fidelity's limitations argument." 522 S.W.3d at 466.

[7] Whoever signed the documents used appellant's passport as identification.

[8] Fidelity provided Mark's testimony that appellant agreed to the loan and allowed her friend to sign the loan documents. Fidelity also provided as summary judgment evidence, an email dated June 8, 2004, from appellant to Mark stating, "I asked you for $5,000. of the 1.? ? ? million that we took out of the house but haven't had the courtesy of a reply."

4

president, testified that he did not know whether Fidelity was aware that appellant had not signed the original loan documents.

On March 24, 2011, Fidelity began foreclosure proceedings on the property. The foreclosure application included Whitley's affidavit stating that appellant and Mark had executed the loan agreement. Appellant filed a verified denial in response to the foreclosure proceedings stating that she had not signed the loan agreement and that she had not given anyone authority to sign on her behalf. Fidelity began investigating whether appellant had actually signed the loan documents. However, according to appellant, Fidelity continued to pursue foreclosure against the couple's homestead and represented to others that appellant had executed the home-equity loan documents. Fidelity also "sent notice of the pending non-judicial foreclosure sale of the [couple's] homestead to the Internal Revenue Service," asserting "that Mark and [appellant] had executed the home-equity loan and that Fidelity had scheduled the foreclosure sale on August 2, 2011."

On June 2, 2011, pursuant to a Rule 11 agreement with Mark and as part of the final divorce decree, appellant conveyed her interest in the home to Mark by special warranty deed, thereby making Mark the sole owner of the home. Fidelity points out that appellant testified that she signed the Rule 11 agreement and accompanying documents based on the advice of her attorneys and confirmed that she did not rely on the advice of anyone else. However, appellant claims that she sold the property because she did not want to be part of the foreclosure proceeding. The divorce court entered a final judgment of divorce decreeing that the home was Mark's sole and separate property and appellant signed the judgment as "approved and consented as to both form and substance." On June 21, 2011, Fidelity nonsuited appellant from the foreclosure proceedings.

On October 13, 2011, Fidelity sold the note and assigned the lien to Tuition LLC, a corporation formed by the Strasburgers for, according to appellant, "the sole purpose of holding the note and lien." Appellant claims that Tuition LLC had been attempting to collect past-due payments on the home-equity note from her and has instituted foreclosure proceedings naming her as a party.

On October 3, 2012, appellant filed suit against Fidelity and Mark asserting claims for fraudulent filing of a financing statement, statutory fraud in a real estate transaction, securing the execution of a document by deception, common law fraud, negligent misrepresentation, "aiding and abetting," fraudulent inducement, and damage to credit. Appellant sought damages from Fidelity that she claims were sustained as a result of misrepresentations made by Fidelity that a loan secured by a fraudulent signature was enforceable. Appellant requested the trial court to declare the loan agreement void and set aside the transfer of the property to Mark.

On March 11, 2013, Fidelity filed its first motion for summary judgment on traditional and no-evidence grounds challenging all elements of appellant's causes of action and claiming the affirmative defense of absolute privilege. On March 13, 2013, appellant amended her petition adding claims for forfeiture of principal and interest and declaratory judgment actions requesting that the lien be declared void and that the special warranty deed be set aside. The trial court granted Fidelity's motion on May 16, 2013. Fidelity filed a subsequent motion for summary judgment as to the claims appellant added in her amended petition arguing that appellant did not have standing and that her suit was barred by the statute of limitations. The trial court granted the motion without specifying the grounds and severed appellant's suit against Fidelity from her claims against Mark. This appeal followed.

*Kyle*, 520 S.W.3d at 76–77 (footnotes in original).

Following Kyle's abandonment of certain claims and the supreme court's 2017 ruling, only the following claims raised by Kyle remain pending: (1) declaratory judgment that the deed of trust securing the loan is void; (2) declaratory judgment setting aside the special warranty deed; (3) Texas Finance Code violations; (4) DTPA violations; and (5) statutory fraud in a real estate transaction under the business and commerce code. *See id.* at 81 n.13.

## II. DISCUSSION

### A. Summary Judgment Law and Standard of Review

A party may move for summary judgment on traditional or no-evidence grounds. *See* TEX. R. CIV. P. 166a(c), (i). In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A defendant seeking traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v.*

6

*Matagorda Cty.*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi 2003, no pet.). A no-evidence summary judgment must show that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

Fidelity's motions for summary judgment raised both traditional and no-evidence grounds. *See* TEX. R. CIV. P. 166a(c), (i). Though the burden varies for traditional and no-evidence summary judgment motions, because all parties brought forth summary judgment evidence, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (citing *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012)). A fact issue exists, precluding summary judgment, if there is more than a scintilla of probative evidence to support each element of the plaintiff's claim. *Id.* Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is less than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). We review the summary judgment evidence in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Because the trial court's orders granting summary judgment do not specify the basis for the rulings, we must affirm the judgments if any of the theories advanced in Fidelity's motions are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). We review the rulings de novo. *Neely*, 418 S.W.3d at 59.

## B. Analysis

The following grounds raised in Fidelity's summary judgment motions have not previously been addressed on appeal: (1) whether Kyle lacks standing to assert her declaratory judgment claims; (2) whether judicial estoppel bars her declaratory judgment, finance code, and DTPA claims; (3) whether the absolute privilege doctrine bars her statutory claims; (4) whether the evidence conclusively negates the reliance and causation elements of Kyle's statutory claims; and (5) whether there is no evidence supporting the statutory claims or the claim to declare the special warranty deed invalid. *See Kyle*, 520 S.W.3d at 467 n.11.[9]

### 1. Standing

In a footnote in its second summary judgment motion, Fidelity argued that Kyle does not have standing to pursue her claims for declaratory relief because she "divested herself of all interest to her homestead." It further contended that, having already conveyed her interest in the homestead, Kyle has no justiciable interest in the loan documents because the loan is "without recourse for personal liability." Kyle argues by

---

[9] Fidelity's second summary judgment motion additionally argued in part that (1) Kyle abandoned her homestead, and (2) her suit constitutes an impermissible collateral attack on the divorce decree. However, the trial court sustained Kyle's objections to these arguments on grounds that they are affirmative defenses which were not pleaded. The trial court ordered Fidelity to plead these defenses in an amended answer prior to moving for summary judgment thereon; however, no amended answer asserting these defenses appears in the record. Accordingly, the trial court could not have properly granted summary judgment on these grounds. *See* TEX. R. CIV. P. 94, 166a(c).

part of her first issue on appeal that summary judgment was improper if granted on these grounds.

Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). A plaintiff has the initial burden to plead facts establishing standing. *See id.* at 446. The issue focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Generally, a party has standing to sue if there is (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44). More specifically, chapter 37 of the civil practice and remedies code, the Uniform Declaratory Judgments Act (UDJA), provides that:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (West, Westlaw through 2017 1st C.S.).

As to her claim for a declaration that the special warranty deed is void, Kyle alleged in her live petition that she is a party to the deed and therefore has a justiciable interest in her claim to determine its validity.[10] However, the sequence of events revealed by the summary judgment evidence shows that there is no genuine controversy surrounding the

---

[10] In the sections of her live petition addressing standing under the UDJA, Kyle asserts that "[t]he justiciable controversy centers around [her] homestead rights to the [subject property] and her rights to the forfeiture of principal and interest paid on the Fidelity Loan." She claims that "[t]his Court's declaration of the void status" of the loan and special warranty deed, respectively, "will resolve this controversy."

9

validity of the special warranty deed. The parties' Rule 11 agreement, in which Kyle agreed to transfer her interest in the homestead to Mark, was executed and filed with the trial court on June 2, 2011. Kyle executed the special warranty deed a few days later. But the agreed divorce decree, rendered in August 2011 and also based on the Rule 11 agreement, also awarded the entire homestead to Mark as part of the just and right division of the marital estate. The decree stated that Kyle "is divested of all right, title, interest, and claim in and to" the homestead. The decree further stated as follows in a section entitled "Judgment Effective to Pass Title":

> Notwithstanding any other provisions of this Agreed Final Decree of Divorce, this judgment shall operate as a conveyance to the parties so named of the real property described herein and title to such real property passes as ordered herein, without the necessity of any further action by the party being divested of title.

> This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this Agreed Final Decree of Divorce.

The terms of the unchallenged divorce decree render the validity of the special warranty deed inconsequential. Even if the trial court were to declare the June special warranty deed invalid, the August divorce decree would effectuate the same result—i.e., a 100% conveyance of Kyle's interest in the homestead to Mark. Accordingly, the judicial declaration sought by Kyle would not "actually determine" a "real controversy" between the parties. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848. It follows that Kyle lacked standing under the UDJA to bring her claim for a declaration that the special warranty deed is invalid. *See id.*

The terms of the agreed divorce decree also deprive Kyle of standing to seek a declaration that the deed of trust securing the home equity loan is void. In particular, consistent with the Rule 11 agreement, the decree allocated 100% of the debt associated

10

with the loan to Mark[11]; and as Fidelity notes, the Texas Constitution provides that a home equity loan is "without recourse for personal liability against each owner and the spouse of each owner . . . ." TEX. CONST. art. XVI, § 50(a)(6)(C); *see Patton v. Porterfield*, 411 S.W.3d 147, 159 (Tex. App.—Dallas 2013, pet. denied). The terms of the decree, combined with the constitutional provision cited above, ensured that Kyle could not be held personally liable on the home equity loan, regardless of whether the trial court declared the deed of trust securing the loan void. Kyle therefore lacked a justiciable interest in the outcome of this claim. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848.

Kyle argues on appeal that she has standing to seek these declarations because she "remain[s] an obligor on the promissory note, her credit continued to be affected by the loan despite the conveyance of the collateral to her husband in the divorce, and she is still named as a respondent in Fidelity's latest foreclosure application." But Kyle did not allege these specific facts in her live petition and her appellate brief directs us to no evidence in the summary judgment record establishing those facts. Accordingly, she has not met her burden to allege facts showing that she has standing to seek a declaration that the deed of trust is void. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

We observe that Kyle's claims are focused principally on the alleged misrepresentations by Mark and Fidelity as to whether the home equity loan was valid

---

[11] The decree stated:

IT IS ORDERED AND DECREED that the husband, MARK KYLE, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by MARK KYLE and wife, WENDY KYLE, in the original principal sum of $1,100,00.00 [sic] dated May 29, 2004, payable to Fidelity Bank of Texas, and secured by deed of trust on the real property awarded in this decree to the husband . . . .

and whether she could be held personally liable thereon. She asserts that, without those alleged misrepresentations, she would not have entered into the Rule 11 agreement to convey her interest in the homestead. But, as the supreme court noted, "[t]here is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Kyle*, 522 S.W.3d at 467 n.10 (citing *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 79 (Tex. 2015) (holding that "courts will not entertain an action [against a governmental unit] under the [UDJA] when the same claim could be pursued through different channels"); *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (noting that a declaratory judgment claim "must do more than merely duplicate the issues litigated via [other] claims" in order to authorize an award of attorney's fees under the UDJA); *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).[12]  To the extent Kyle seeks relief in connection with the alleged misrepresentations, her remaining statutory claims provide an enforceable remedy and the declarations she seeks "would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *See id.*

For the foregoing reasons, we conclude that the trial court's summary judgment on Kyle's declaratory judgment claims was proper on grounds that she lacked standing. This

---

[12] The supreme court held that Kyle's declaratory judgment claims are not moot merely because "[w]hile the appeal was pending, Mark sold the encumbered property at issue to a third party" and the home equity loan was paid off." *Kyle v. Strasburger*, 522 S.W.3d 461, 467 (Tex. 2017). Nevertheless, it explicitly declined to opine on "whether the above-referenced doctrine precludes Kyle from litigating them alongside her remaining statutory claims." *Id.* at 467 n.10.

12

part of Kyle's first issue on appeal is overruled. We proceed to address the remaining summary judgment grounds as they pertain to Kyle's remaining statutory claims.

### 2. Judicial Estoppel

Fidelity argued in its second summary judgment motion that Kyle is judicially estopped from asserting that she did not execute the home equity loan documents "because she successfully took the contrary position in the divorce action." Fidelity's argument is based on the recital, in the section of the divorce decree regarding the just and right division of marital liabilities, that both Kyle and Mark "executed" the promissory note associated with the loan. *See supra* n.11. Fidelity notes that Kyle signed the decree under a statement indicating that she "approved and consented to" both the "form and substance" of the decree. It argues that this negates the contrary assertion made by Kyle as part of her finance code and DTPA claims.

Judicial estoppel "precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). "The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy." *Id.* "Its essential function 'is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage.'" *Id.* (quoting *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 (Tex. App.—El Paso 1997, writ denied)).

By part of her first issue on appeal, Kyle contends that the recital in the decree cannot give rise to judicial estoppel because it "is not a sworn statement." We agree. Judicial estoppel may be based only on a sworn statement made in a prior judicial proceeding. *See Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956) ("Under the doctrine of

13

judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding *under oath* the contrary to the assertion sought to be made." (emphasis added)); *In re Marriage of Butts*, 444 S.W.3d 147, 151 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Owen v. Knop*, 853 S.W.2d 638, 641 (Tex. App.—Corpus Christi 1993, writ denied) (noting that "the doctrine of judicial estoppel serves to uphold the sanctity of the oath, and to eliminate the prejudice which would result to the administration of justice if a litigant were to swear one way one time and a different way another time"). Citing *Schubert*, Fidelity argues that a statement need not be sworn in order to trigger judicial estoppel, but the Texas Supreme Court held nothing of the sort in that case. *See* 264 S.W.3d at 6. Though the *Schubert* Court did not recite the well-established precedent that a statement must be sworn in order to give rise to judicial estoppel, it held that the doctrine did not apply in that case for three unrelated reasons. *See id.* Therefore, it is inapposite.

Because the recital in the agreed divorce decree was not a sworn statement, it could not have served as the basis for judicial estoppel. Therefore, the trial court erred if it granted summary judgment on these grounds. We sustain this part of Kyle's first issue.

### 3. Absolute Privilege

It is first summary judgment motion, Fidelity argued that Kyle's statutory claims are barred because they are based on statements made in the foreclosure proceedings and are therefore absolutely privileged. *See, e.g., Neely*, 418 S.W.3d at 62 ("[T]he common law has recognized a judicial proceedings privilege since at least 1772 for parties, witnesses, lawyers, judges, and jurors."); *Krishnan v. Law Offices of Preston Henrichson,*

14

*P.C.*, 83 S.W.3d 295, 302 (Tex. App.—Corpus Christi 2002, pet. denied) ("Absolute privilege provides that communications that are made in the due course of a judicial proceeding cannot serve as the basis for a defamation action."). On appeal, Kyle asserts by her third issue that the doctrine of absolute privilege does not apply to her statutory claims because those claims "does not sound in defamation and she does not seek defamation-type damages."

This Court addressed the issue of absolute privilege as it pertains to this case in our 2016 opinion affirming the trial court's denial of Fidelity's motion for sanctions. *See Strasburger v. Kyle*, No. 13-14-00079-CV, 2016 WL 1072618, at *1 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op.). In considering whether Kyle's pleadings were frivolous because they were barred by the absolute privilege doctrine, we noted that the doctrine "typically applies" only in "claims of libel and slander arising out of judicial proceedings." *Id.* at *3 (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942)). We then held:

> . . . . Kyle's claims are not based solely on Fidelity's legal filings for foreclosure. There were communications between at least the bank president and Kyle's agents regarding the threatened foreclosure by Fidelity as well as alleged verbal threats to foreclose even after Fidelity knew Kyle claimed both lack of consent to the underlying loan and forgery. Fidelity sent a notice to the Internal Revenue Service. Further, Fidelity was directly involved in negotiations surrounding the Rule 11 agreement and special warranty deed wherein Kyle signed away her interest. In its reply brief, Fidelity cites *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291 S.W.3d 448, 451 (Tex. App.—Fort Worth 2009, no writ). However, once again, the case deals with libel or slander in a governmental context: "the affirmative defense that the alleged defamatory statements were absolutely privileged under the doctrine of quasi-judicial immunity." *Id.*; *see also Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex. 1994) (stating that a communication was privileged where the father's damages were basically defamation).
>
> Moreover, as Kyle argues, the *Lee* case observes: "We know of no Texas case where absolute privilege was asserted as anything other than an

15

affirmative defense to a defamation claim." *In re Lee*, 995 S.W.2d 774, 776 (Tex. App.—San Antonio 1999, orig. proceeding).[13]

With due consideration for the above arguments and authorities, we hold that absolute privilege did not apply, or there was a sound argument against its application under these facts.

*Strasburger*, 2016 WL 1072618, at *3 (footnote in original).

The question we addressed in *Strasburger* (whether Kyle's argument against application of the absolute privilege doctrine was frivolous) differs slightly from the one that is presented here (whether Fidelity conclusively established application of the doctrine). *See id.*; *see also Cathey*, 900 S.W.2d at 341. Nevertheless, the observations we made in the earlier case are salient to this appeal. In particular, as we noted in 2016, Kyle's statutory claims are based in part on her allegations that Fidelity threatened her with foreclosure and notified the IRS of her potential liability, even after Fidelity was made aware that she was claiming that her signature was forged on the loan documents and she did not consent to the loan. Kyle claims that Fidelity's threats were false because the loan was void, and that she would not have otherwise agreed to transfer her interest in the homestead. The communications made by Fidelity directly to Kyle and to the IRS are independent of the allegations made by Fidelity in its foreclosure pleadings and do not constitute statements made in the course of judicial proceedings.

In any event, even assuming that Fidelity's threats were made only in the context of judicial proceedings, the judicial privilege doctrine does not apply to claims of the sort brought by Kyle. Fidelity is correct that the judicial privilege doctrine may, under certain circumstances, apply in non-defamation cases. But those circumstances are limited to

---

[13] We acknowledge other cases sometimes extend the absolute privilege rule into a broader context but here other proof takes the claim outside the rule.

16

cases in which a plaintiff, though asserting a non-defamation claim, seeks "defamation damages"—i.e., damages for loss of reputation and mental anguish. *See Bird*, 868 S.W.2d at 772 (finding absolute privilege applied in negligence suit because the damages sought "are basically defamation damages"); *5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 259 (Tex. App.—Fort Worth 2004, pet. denied) (holding absolute privilege applied in tortious interference with contract claim because plaintiff sought "defamation-type damages based on the allegedly libelous communications"); *Laub v. Pesikoff*, 979 S.W.2d 686, 691–92 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding absolute privilege applied in intentional infliction of emotional distress claim because essence of claim was that plaintiff was injured "as a result of the *communication* of allegedly false statements during a judicial proceeding"); *see also Tex. Mut. Ins. Co. v. Ray Ferguson Interests, Inc.*, 2006 WL 648834, at *9 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (mem. op.) (holding that absolute privilege applied in deceptive insurance practices claim under Texas Insurance Code because "although [plaintiff] did not plead defamation, its theory of damages was that its clients, creditors, and bonding companies abandoned it, in part, because of the [insurer's] allegations and assertions . . . made in the course of this judicial proceeding"); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. CIV.A. H-06-2736, 2009 WL 890398, at *22 (S.D. Tex. Mar. 30, 2009) (mem. op.). To the extent Kyle's statutory claims are based on statements made in judicial proceedings, they do not seek relief akin to reputational or mental anguish damages—instead, they seek damages arising from Kyle's agreement to transfer her interest in the homestead to Mark.[14]

---

[14] It is also noteworthy that misrepresentations "in a judicial or governmental proceeding" are explicitly made actionable under the Texas Finance Code and DTPA provisions pleaded by Kyle. *See* TEX. FIN. CODE ANN. § 392.304(a)(8) (West, Westlaw through 2017 1st C.S.) (providing generally that "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent,

17

We conclude that the absolute privilege doctrine does not bar Kyle's Texas Finance Code, DTPA, and statutory fraud claims. Her third issue is sustained.

### 4. Conclusive Negation of Reliance and Causation

Fidelity argued in both summary judgment motions that Kyle's deposition testimony conclusively negates her allegations that she relied on misrepresentations by Fidelity in signing the Rule 11 agreement, agreed divorce decree, and special warranty deed. It also argued that her testimony conclusively negates the causation element of her statutory claims. In her second issue on appeal, Kyle argues that she produced evidence generating an issue of fact as to the reliance and causation elements.[15]

In its summary judgment motions, Fidelity cited the following deposition testimony given by Kyle:

| | |
|---|---|
| Q. [Fidelity's counsel] | You entered into a settlement with your husband, with Mark Kyle. Correct? |
| A. [Kyle] | Yes. |
| Q. | Okay. And that settlement split up both the debts and the assets. Correct? |
| [Kyle's counsel]: | Objection, form. |
| THE WITNESS: | I believe that's what a divorce is. |

deceptive, or misleading representation . . . misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding . . . "); *id.* § 392.404(a) (West, Westlaw through 2017 1st C.S.) (providing that a violation of finance code chapter 392 is also actionable under the DTPA). This indicates that the clear intent of the Legislature was to exclude these statutory claims from application of the judicial privilege doctrine.

[15] Kyle also argues by her second issue that reliance is not an essential element of her claim under the Texas Finance Code. *See id.* § 392.403(a)(2) (West, Westlaw through 2017 1st C.S.). For purposes of this issue, we will assume, but not decide, that reliance is an element of that cause of action. It is undisputed that reliance is an essential element of a claim for fraud in a real estate transaction under the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1)(B) (West, Westlaw through 2017 1st C.S.).

18

Q.         And you entered into that agreement based upon the advice of—of your lawyers. Correct?

A.         Yes.

Q.         Okay. And your lawyers being Ms. Jodi Lazar and Ms. Rikki Rivers. Correct?

A.         Yes.

Q.         And also Mr. Tom Virr?

A.         Yes. He—yes.

Q.         Okay. Okay. Was there anybody else who was giving you advice as to whether or not to enter into that divorce settlement, aside from those three lawyers?

A.         No.

Q.         Okay. And you relied on that advice. Correct?

A.         Yes.

Q.         Okay. In looking back at it now, you think that was bad advice. Correct?

A.         Yes.

Q.         Okay. And it was—it was—it was the advice from those attorneys that caused you to enter into that agreement and to, as you say, I think, give away your half of the house. Is that right?

[Kyle's counsel]:         Object objection, form.

THE WITNESS:         Yes. I believe that Rikki Rivers stated specifically that even if the signature was forged, that I would still be responsible for the debt.

Q. [Fidelity's counsel]         And did Jodi Lazar tell you something similar?

A.         Yes.

Fidelity argued that this shows Kyle relied solely on her three attorneys' "advice," and did not rely on anyone else's "advice," in agreeing to the terms of the divorce decree.

19

In response, Kyle contends that, even though the only "advice" she relied on was that of her attorneys, she also relied on Fidelity's alleged misrepresentations. She points to additional testimony later in the same deposition which she argues creates a fact issue as to whether she relied on Fidelity's representations. In particular, Kyle testified as follows:

| | |
|---|---|
| Q. [Fidelity's counsel] | . . . [Y]ou allege in Paragraph 38 [of the live petition] that your husband obtained the Fidelity loan documents through deception. Do you see that? |
| A. [Kyle] | Yes. |
| Q. | Okay. And then you add my clients and say that they obtained your execution of the Rule 11 Agreement through deception. Correct? |
| A. | Yes. |
| Q. | Okay. What deception did my clients perform on you that got you to execute the Rule 11 Agreement? |
| A. | They said that they were going to foreclose, and I believed that I was liable for the debt. |
| Q. | And they said they were going to foreclose in the documents, the application for foreclosure. Correct? |
| A. | . . . Yes. |
| Q. | In Count 4, "Common Law Fraud," . . . you allege that the Defendants committed common law fraud when they misrepresented to you that your home would be foreclosed upon. Correct? |
| A. | Yes. |
| Q. | Okay. And that representation, at least by my clients, was, again, in that application for foreclosure. Correct? |
| [Kyle's counsel]: | Objection, form. |

20

THE WITNESS:          Yes.

Q. [Fidelity's counsel]   Okay.  Count 5, the "Negligent Misrepresentation," you say, "The Defendants are guilty"—this is Paragraph 44—"of negligent misrepresentation because they did not exercise reasonable care when they represented to Wendy that her interest in the River Hills home would be foreclosed upon if she did not sign the Rule 11 Agreement.["]  Do you see that?

A. [Kyle]             Yes.

Q.                    Okay.  Who told you that if you didn't sign the Rule 11 Agreement, the home would be foreclosed upon?

A.                    Jodi Lazar.

Q.                    Who else?

A.                    Rikki Rivers.

Q.                    Anybody else?

A.                    That's it.

We agree with Kyle that this testimony was enough to establish a genuine issue of material fact as to whether she relied on Fidelity's alleged misrepresentations in agreeing to convey her share of the homestead to Mark.  The testimony cited by Fidelity in its summary judgment motions established that Kyle relied on the advice of her attorneys in signing the agreed divorce decree; however, the Rule 11 agreement was executed before the divorce decree, so it is plausible that her attorneys were simply advising Kyle to comply with the terms of the earlier agreement when they advised her to sign the decree. Kyle additionally testified that only her attorneys—not Fidelity—told her "if you didn't sign the Rule 11 Agreement, the home would be foreclosed upon."  But that narrow fact does not conclusively establish that she did not rely on Fidelity's alleged misrepresentations. The misrepresentations by Fidelity, as alleged by Kyle, did not explicitly involve the Rule

21

11 agreement at all—instead, they were confined to the status or character of the home equity loan.

Kyle cites cases holding in the fraud context that, even if a misrepresentation is "not a party's sole inducement for entering into the contract," it "may still be material so long as the party relied on it." *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical Co., L.P.*, 335 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727 (Tex. App.—Waco 1998, pet. denied). Although these cases discuss materiality rather than reliance, they are instructive because they show that there may be multiple pieces of information upon which a party relies when agreeing to enter into a contract. As set forth above, when asked what "deception" Fidelity engaged in that "got [her] to execute" the Rule 11 agreement, Kyle replied: "They said that they were going to foreclose, and I believed that I was liable for the debt." This statement constitutes more than a scintilla of evidence that Kyle relied upon Fidelity's representations when she first agreed to convey her share of the homestead, and it constitutes more than a scintilla of evidence that those representations proximately caused her to do so. Therefore, Fidelity did not meet its burden to conclusively disprove the reliance element of Kyle's statutory claims. *See Cathey*, 900 S.W.2d at 341. Kyle's second issue is sustained.

### 5. No-Evidence Summary Judgment

Finally, we address Kyle's fourth issue on appeal, by which she argues that she provided more than a scintilla of probative evidence as to the challenged elements of her

statutory claims, thereby defeating Fidelity's no-evidence grounds for summary judgment.[16]

To establish fraud in a real estate transaction under chapter 27 of the business and commerce code, a plaintiff must prove these essential elements: (1) a transaction involving real estate; (2) the defendant made a false representation of fact, a false promise, or benefited by not disclosing that some other person's representation or promise was false; (3) the false representation or promise was made to induce the plaintiff to enter into a contract; (4) the plaintiff relied on the false representation or promise and entered into the transaction; and (5) the reliance caused the plaintiff's injury. *Kyle*, 520 S.W.3d at 81; *see* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West, Westlaw through 2017 1st C.S.). Fidelity's first summary judgment motion challenged each element listed above except the first.

To recover under chapter 392 of the Texas Finance Code, a plaintiff must prove that: (1) a debt collector used "a fraudulent, deceptive, or misleading representation that employs" one of several prohibited practices, including, as pleaded here, "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding"; and (2) the plaintiff sustained actual damages as a result. TEX. FIN. CODE ANN. §§ 392.304(a)(8), 392.403(a)(2) (West, Westlaw through 2017 1st C.S.). A violation of chapter 392 is also a deceptive trade practice actionable under the DTPA. *Id.* § 392.404(1) (West, Westlaw

---

[16] Kyle also argues by this issue that she produced evidence as to all essential elements of her claim for declaratory judgment that the special warranty deed is invalid. However, we have already held that she did not have standing to raise that claim. Therefore, we do not address that argument. *See* TEX. R. APP. P. 47.1.

23

through 2017 1st C.S.). Fidelity's second summary judgment motion challenged each element of these claims.

We have already held above that Kyle's deposition testimony—in which she stated that Fidelity's application for foreclosure was the "deception" that "got [her] to execute" the Rule 11 agreement—was sufficient to create a fact issue as to the elements of reliance and causation. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a); TEX. FIN. CODE ANN. §§ 392.403(a)(2). We will proceed to consider the remaining elements of Kyle's statutory claims.

Misrepresentation is an essential element of all three statutory claims. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)[17]; TEX. FIN. CODE ANN. §§ 392.304(a)(8). Kyle argues that Fidelity's foreclosure application is evidence supporting this element. The application, signed by Fidelity's counsel and filed with the district court on March 24, 2011, stated in relevant part as follows:

> FIDELITY BANK OF TEXAS, the applicant, seeks an order from this court pursuant to TEX. R. CIV. P. 736 allowing foreclosure of a lien on real property securing a debt owed to the application by Mark Kyle and Wendy Kyle, the respondents . . . .
>
> The respondents are residents of Travis County, Texas, and are the persons obligated to pay the debt described in Paragraph II below, according to the records of the applicant.
>
> On May 20, 2004, the respondents executed and delivered to the applicant a Texas Home Equity Extension of Credit in the amount of [$1,100,000] to be paid in equal monthly installments commencing on June 20, 2004 for thirty years in the amount of [$5,905.32]. The respondents also executed a Texas Home Equity Deed of Trust in favor of the trustee, in trust for the

---

[17] Kyle did not allege that Fidelity made a false promise or benefited by not disclosing that some other person's representation or promise was false. Therefore, to establish statutory fraud in a real estate transaction, she had to show that Fidelity made a "false representation of a past or existing material fact." TEX. BUS. & COM. CODE ANN. § 27.01(a)(1).

24

benefit of the applicant, as security for the Texas Home Equity Extension of Credit.

The debt owed by the respondents to the applicant is secured by a lien created under Article XVI, Section 50(a)(6) of the TEXAS CONSTITUTION on the [subject property] . . . .

The respondents, although obligated by the terms of Home Equity Extension of Credit . . . , failed to pay the property taxes. . . . The failure to pay the property taxes in a timely manner constituted a default under the Texas Home Equity Deed of Trust.

Attached to the application was a copy of the forged deed of trust. According to Kyle, the application contained the misrepresentations upon which she relied in agreeing to transfer her share of the homestead to Mark.

Fidelity argues that the foreclosure application cannot be evidence of a misrepresentation because it also contained an extensive disclaimer which noted Kyle's claims of forgery, explained that she already conveyed her interest in the property to Mark, and affirmed that the loan is "without recourse for personal liability" for Kyle.[18] However, the version of the foreclosure application which was attached as evidence to Fidelity's summary judgment motions did not contain this disclaimer. Instead, as Fidelity concedes, this disclaimer was included for the first time in a subsequent application for foreclosure filed on December 9, 2013, well after the trial court rendered its two summary judgment

---

[18] The entire disclaimer is as follows:

Wendy Kyle is listed as a Respondent in these proceedings in order that Petitioner may comply with Texas law and ensure that Ms. Kyle receives notice of these proceedings. See Tex. R. Civ. P. 736.1(d)(1)(8). Ms. Kyle claims that she did not sign the Note and Deed of Trust. On June 6, 2011, she executed a Special Warranty Deed, deeding her interest in the property to Mark Kyle. A true and correct copy of the Special Warranty Deed is attached to the Affidavit of Terry Whitley as Exhibit "F". In the Special Warranty Deed, Mr. Kyle agrees to "indemnify and hold [Ms. Kyle] harmless from payment of the note and from performance of [her] obligations specified in the instruments securing payment of the note." Accordingly, while Ms. Kyle's name is on the loan agreement, as evidenced by Exhibits "B" and "C", Petitioner recognizes that Ms. Kyle no longer has an interest in the Property and that Mr. Kyle agreed to assume all liability on the Note. Because this is a home equity loan, it without recourse for personal liability as to Ms. Kyle [sic].

25

orders. Indeed, the version of the application containing the disclaimer does not appear in the trial court record, but was attached to Fidelity's brief on appeal. Accordingly, we do not consider the disclaimer in our analysis. *See* TEX. R. CIV. P. 166a(c); *Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 932 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Blankinship v. Brown*, 399 S.W.3d 303, 309 (Tex. App.—Dallas 2013, pet. denied).

Instead, considering only summary judgment evidence properly before the trial court, we conclude that there was more than a scintilla of evidence that Fidelity made a misrepresentation concerning the character and status of the debt associated with the home equity loan. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a); TEX. FIN. CODE ANN. §§ 392.304(a)(8).

Next, Kyle's statutory fraud claim required a showing that Fidelity's representations were made to her for the purpose of inducing her to enter into a contract. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1)(A). As evidence to support this element, Kyle points to an email from her attorney to Fidelity's attorney, which she attached as evidence to her summary judgment response. The email, dated June 8, 2011, contained a copy of the newly-executed Special Warranty Deed and stated in part: "As we discussed, since Wendy Kyle no longer has an interest in the property, you will dismiss her with prejudice from the foreclosure action." Kyle's summary judgment response also included a copy of the notice of non-suit filed by Fidelity on June 21, 2011 dismissing Kyle from the foreclosure action. This constitutes more than a scintilla of evidence that Fidelity's representations in the foreclosure application were made to Kyle for the purpose of inducing her to enter into the Rule 11 agreement and special warranty deed.

26

Finally, Kyle was required to show that she suffered actual damages as part of her finance code and DTPA claims. *See* TEX. FIN. CODE ANN. § 392.403(a)(2). Kyle testified at deposition that she executed the Rule 11 agreement and special warranty deed because of the representations made by Fidelity in the foreclosure application. Her theory is that, had Fidelity not made those representations, she would not have agreed to convey her share of the homestead as part of the divorce settlement, and she then could have challenged the foreclosure process. Subsequent events in these proceedings have lent significant credence to that theory. In particular, the supreme court held that, assuming Kyle did not consent to the home equity loan, the lien associated with the loan is void *ab initio* because it did not comply with the Texas Constitution. *Kyle*, 522 S.W.3d at 465 (citing *Wood*, 505 S.W.3d at 548); *see* TEX. CONST. art. XVI, § 50(a)(6)(A) (requiring a foreclosure-eligible home-equity loan to be "secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse"). Thus, had she retained her interest in the homestead, Kyle would have been able to make a colorable case that foreclosure was prohibited. *See Kyle*, 522 S.W.3d at 465 n.7 (noting that article XVI, section 50 "describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default"). We conclude that Kyle has produced more than a scintilla of evidence that she suffered actual damages as a result of Fidelity's alleged misrepresentations.

Having found more than a scintilla of evidence to support each of the challenged elements, we conclude that trial court erred if it granted summary judgment on no-evidence grounds. Kyle's fourth issue is sustained.

## C. Repleading of Forfeiture Claim

In her motion for rehearing, Kyle observes that the Texas Supreme Court noted as follows in its 2017 opinion:

> Kyle argues that, as we recognized in *Garofolo*, an independent contractual right to compel forfeiture exists because the constitutional forfeiture provision was incorporated into the terms of the loan. She requests that the case be remanded in the interest of justice in the event she has not adequately pled a forfeiture claim based on the terms of the loan. She further argues that she may pursue such a claim even though she is not a formal party to the loan agreement. As these issues have not been considered by the lower courts, and we are remanding to the court of appeals to consider other as-yet unaddressed arguments, we leave it to that court to consider this request in the first instance.

*Id.* at 466. Kyle argues that, in light of the supreme court's instructions, we should "consider whether and how [she] could adequately plead a forfeiture cause of action" in this opinion.

The forfeiture claim raised in Kyle's live petition was based solely on article XVI, section 50 of the Texas Constitution, and the Texas Supreme Court affirmed the dismissal of that claim. *Id.* Having found that summary judgment was unwarranted on some of Kyle's other claims, we will remand the case to the trial court, and we clarify that nothing in this opinion shall be construed as prohibiting Kyle from repleading "a forfeiture claim based on the terms of the loan" on remand. *See id.*; *see also* TEX. R. CIV. P. 63. However, because such a claim has not yet been pleaded, we decline to address whether "she may pursue such a claim even though she is not a formal party to the loan agreement." *See Kyle*, 522 S.W.3d at 566; *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (noting that Texas courts have no jurisdiction to render advisory opinions).

28

### III. CONCLUSION

The trial court properly dismissed Kyle's declaratory judgment claims because Kyle lacked standing. However, summary judgment was improper as to Kyle's finance code, DTPA, and statutory fraud claims. Accordingly, we affirm the trial court's judgment of dismissal as to the declaratory judgment claims, reverse the remainder of the judgment, and remand for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice

Delivered and filed the
4th day of April, 2019.